DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
DONALD P. MARGOLIS, State Bar #116588
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3853
Facsimile:     (415) 554-3837
E-Mail:        don.margolis@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
THOMAS ABRAHAMSEN, LORENZO ADAMSON,
DAVID OBERHOFFER, JERRY KING, MICHAEL
WILLIAMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| RONALD GREEN, | Case No. C 07-3433 MMC |
|---|---|
| Plaintiff, | **DEFENDANTS' STATUS CONFERENCE STATEMENT** |
| vs. | Conf. Date:    August 29, 2008 |
| CITY AND COUNTY OF SAN FRANCISCO, THOMAS ABRAHAMSEN, LORENZO ADAMSON, DAVID OBERHOFFER, JERRY KING, MICHAEL WILLIAMS, RAMON BUNAG, ESTHER GRANIZO and Does 1-50, inclusive, | Time:          10:30 a.m.<br>Place:         Crtrm 7, 19th Fl.<br><br>Trial Date:    December 1, 2008 |
| Defendants. | |

Defendants City and County of San Francisco, Thomas Abrahamsen, Lorenzo Adamson, David Oberhoffer, Jerry King, and Michael Williams submit this status conference statement.

**I.     STATEMENT OF CASE**

Plaintiff Ronald Green alleges that the defendants violated his fourth amendment rights on July 1 and 28, 2005.

On July 1, defendant officers responded to 1 Santa Barbara, where plaintiff Green rented the downstairs in-law unit. Green made the initial call for police service at about 8:57 a.m. Landlord Esther Granizo, who lived upstairs, called for police service about four minutes later, at 9:01 am. The police dispatcher learned from Green that his "tenant" had locked Green out of the kitchen. The dispatcher learned from Ms. Granizo that Green was banging on her door and demanding that Ms. Granizo open it, and that Green owned a gun. Officer King, and later Sergeant Williams, arrived. Officer King asked Green whether he had any firearms, to which Green responded "yes," and showed Officer King the loaded 9-millimeter pistol under Green's shirt. After obtaining Green's consent, Officer King searched Green's room and found four more firearms, and several rounds of ammunition for each. The officers detained Green in handcuffs for about an hour, because they learned from the dispatcher that there was an outstanding warrant for Green's arrest. It took about an hour to determine the information regarding the warrant was erroneous, after which the officers released Green. Green claims that the officers violated his fourth amendment rights by searching his living unit without his consent, detaining him while they ascertained whether there was a warrant outstanding for his arrest, and confiscating his five firearms, a knife, and numerous rounds of ammunition for the firearms. The officers contend they confiscated Greens' guns and ammunition for safekeeping, in light of the campaign of harassment that his landlord, present at the scene, reported Green directing toward her, and the absence of any indicia of ownership of those items. Green admits he has never sought the return of those weapons.

On July 3, 2005, Officers Abrahamsen and Adamson responded to another call for service at 1 Santa Barbara, again from Ms. Granizo. They were specifically aware of their colleagues' response two days earlier, and their discovery of firearms in Green's possession. The July 3 incident does not form the basis of a claim by Green in this action, but provides significant context. On that occasion, the responding officers spoke to Ms. Granizo, who showed them security bars on one of her windows that Green removed without asking permission. Ms. Granizo told the officers Green was harassing her because she was having him evicted. Although at the time, Green denied having removed the bars, at his deposition in this action, Green admitted doing so. The officers documented the complaint and their observations in a police report, and took no further action.

On July 28, 2005, defendant Officers Abrahamsen and Adamson again responded to a call for service at 1 Santa Barbara Avenue. Another landlord, Ramon Bunag, had called, complaining that Green had taken over the house by force, and that Green may have firearms. The responding officers were fully aware of their own and their colleagues' contacts with Green and his landlord earlier in the month. Upon their arrival, one officer interviewed Green, and one interviewed Mr. Bunag.

The officers arrested Green for trespassing, malicious mischief, aggravated assault with a gun, and mental health evaluation, and confiscated additional firearms they located in his possession. The decision to arrest was based on a number of factors, including: (1) Green's responding to the officers' knock on the downstairs door that they knew was connected to Green's in-law unit, by opening the *upstairs* door that the officers knew belonged to the main house that they understood was not part of Green's leased premises; (2) Green's rants that the house belonged to him; that he had changed the locks on it; that his landlords were conspiring against him; that he needed a gun to protect himself; that the landlords were part of a gang; that some unknown person was trying to poison him (as alleged in paragraph 18 of his complaint); that he had taken possession of the premises "under the right of personal enjoyment," and was in the process of taking title to the property; and the presence of a loaded rifle without a functioning lock in Green's garage; (3) Bunag's report at the scene that Green had threatened Bunag with a gun; and that Green was "crazy"; and (4) Green's appearance to the officers as being paranoid and delusional. The officers also confiscated a rifle and 13 different types of ammunition.

Personnel at San Francisco Jail Psychological Services independently evaluated Green and determined he was delusional and an imminent risk of danger to others. They detained him for evaluation under California Welfare and Institutions Code section 5150. Green remained in pretrial detention for approximately 85 days. He was criminally tried on charges of making a terrorist threat; exhibiting a deadly weapon, and assault with a firearm. He was found not guilty, and released.

Plaintiff now sues the City and five responding officers for false arrest and unlawful search of his residence and seizure of his firearms, other weapons, and ammunition. The officers claim qualified immunity, consent to search, and probable cause to search his residents, arrest him, and seize his weapons.

**II.    PROCEDURAL STATUS**

This case is set for trial on December 1, 2008.  By the deadline of September 5, 2008, the defendants shall move for summary judgment or partial summary judgment.  They shall notice the motion for hearing on October 10, 2008.

All discovery shall be completed by the status conference, except for expert discovery.

Defendants anticipate the need for only one possible specific court action at this juncture:  one of the important documents in this case is the "Event History Detail" for July 1, 2005 (sometimes referred to as the "CAD" [computer assisted dispatch] printout]).  This document summarizes the radio communications between the officers in the field and central dispatch.  Portions of the document are redacted by the City's Department of Emergency Management, because they contain confidential criminal history information that cannot be disclosed to persons other than those involved in law enforcement.  The defendants have produced this document to plaintiff in redacted form.  The defendants prefer to produce and rely upon, as an exhibit, the unredacted version of the documents.  Defense counsel is currently attempting to obtain an unredacted version, which counsel is willing to produce to plaintiff's counsel, but only if subject to a strict protective order limiting the dissemination of the documents or the information contained therein.  Counsel shall probably submit a form of protective order for the Court's consideration in the near future.

Dated:  August 22, 2008

                DENNIS J. HERRERA
                City Attorney
                JOANNE HOEPER
                Chief Trial Deputy
                DONALD P. MARGOLIS
                Deputy City Attorney

By: _____/s/_____
     DONALD P. MARGOLIS

Attorneys for Defendants