1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  DONALD P. MARGOLIS, State Bar #116588
   MEREDITH B. OSBORN, State Bar #250467
4  Deputy City Attorney
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:    (415) 554-3853
   Facsimile:    (415) 554-3837
7  E-Mail:    don.margolis@sfgov.org

8

9  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO,
   THOMAS ABRAHAMSEN, LORENZO ADAMSON,
10 DAVID OBERHOFFER, JERRY KING, MICHAEL
   WILLIAMS
11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15 | RONALD GREEN, | Case No. C 07-3433 MMC |
16 | Plaintiff, | **MEMORANDUM OF POINTS AND** |
17 | vs. | **AUTHORITIES IN SUPPORT OF** **DEFENDANTS' MOTION FOR** **SUMMARY JUDGMENT OR** **PARTIAL SUMMARY JUDGMENT** |
18 | CITY AND COUNTY OF SAN | |
   | FRANCISCO, THOMAS ABRAHAMSEN, | |
19 | LORENZO ADAMSON, DAVID | |
   | OBERHOFFER, JERRY KING, MICHAEL | Hearing Date:    October 10, 2008 |
20 | WILLIAMS, RAMON BUNAG, ESTHER | Time:    9:00 a.m. |
   | GRANIZO and Does 1-50, inclusive, | Place:    Crtrm 7, 19th Fl. |
21 | | |
22 | Defendants. | Trial Date:    December 1, 2008 |

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ........................................................................ 2

    I.      JULY 1, 2005 INCIDENT ............................................................... 2

    II.     JULY 3, 2005 INCIDENT ............................................................... 5

    III.    JULY 28, 2005 INCIDENT ............................................................. 5

SUMMARY OF CLAIMS ................................................................................................. 9

ARGUMENT ................................................................................................................... 10

    I.      THE FIRST CLAIM FOR RELIEF UNDER THE FOURTH AMENDMENT BASED ON THE JULY 1 INCIDENT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT .................................... 10

        A.    The Officers Did Not Violate Plaintiff's Fourth Amendment Rights On July 1, 2005 ..................................................... 11

            1.    Plaintiff's Short Detention To Verify an Outstanding Warrant Did Not Violate His Fourth Amendment Rights. .......................... 11

            2.    Plaintiff Consented To The Officers' Entry Into His Premises ...... 12

            3.    Confiscating Plaintiff's Weapons Did Not Violate His Fourth Amendment Rights. .................................................. 13

        B.    The Officers Are Entitled to Qualified Immunity ...................................... 13

            1.    Officer King Enjoys Immunity For the Detention. ........................ 14

            2.    Officer King Enjoys Qualified Immunity For the Entry ............... 14

            3.    Sergeant Williams and Officer King Enjoy Qualified Immunity For the Removal of Firearms. .............................. 15

    II.     THE SECOND CLAIM FOR RELIEF UNDER THE FOURTH AMENDMENT BASED ON THE JULY 28, 2005 INCIDENT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT. ............................. 15

        A.    The Officers Did Not Violate Plaintiff's Fourth Amendment Rights on July 28, 2005. .................................................. 15

            1.    The Officers Had Probable Cause to Arrest Plaintiff on July 28, 2005 ................................................................... 16

            2.    California Welfare and Institutions Code Section 8102 Authorized the Officers to Seize Plaintiffs' Firearms. ................... 18

            3.    Plaintiff's Claims For False Arrest And Unlawful Search On July 28, 2005 Are Barred By The Doctrine Of Collateral Estoppel, Or Issue Preclusion. ................................. 20

        B.    The Officers Are Entitled to Qualified Immunity ..................................... 21

III.    THE THIRD CLAIM FOR RELIEF FOR MALICIOUS PROSECUTION
UNDER THE FOURTH AMENDMENT FAILS BECAUSE PLAINTIFF
CAN PRESENT NO EVIDENCE THAT THE DEFENDANT OFFICERS
ACTED WITH MALICE. ....................................................................................22

IV.    THE FOURTH CLAIM FOR RELIEF FOR CONSPIRACY FAILS FOR THE
SAME REASONS THE FIRST THREE CLAIMS FOR RELIEF FAIL, AND
BECAUSE PLAINTIFF HAS NO EVIDENCE OF A CONSPIRACY. ..............23

V.    THE FIFTH CLAIM FOR RELIEF FOR MUNICIPAL LIABILITY FAILS
BECAUSE PLAINTIFF CANNOT PROVE A VIOLATION OF HIS
CONSTITUTIONAL RIGHTS, AND BECAUSE PLAINTIFF CAN
PRESENT NO EVIDENCE THAT ANY POLICE CONDUCT WAS IN
FURTHERANCE OF ANY UNCONSTITUTIONAL POLICY OR CUSTOM. 24

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**State Cases**

*People v. Triplett*
    144 Cal.App.3d 283 (1983) ......................................................................17, 18

*Rupf v. Yah*
    85 Cal.App.4th 411 (2000) .............................................................................19

*Scott v. Harris*
    127 S.Ct. 1769 (2007)................................................................................10, 16

*Teitelbaum Furs, Inc. v. Dominion Ins. Co. Ltd.*
    58 Cal.2d 601 (1962) .....................................................................................21

**State Statutes & Codes**

Penal Code
    § 245(a)(2) ........................................................................................................9

Penal Code
    § 422 .................................................................................................................9

Penal Code
    § 417(a) .............................................................................................................9

Welfare and Institutions Code
    § 8102 ..................................................................................................18, 19, 22

**Federal Cases**

*Allen v. City of Portland*
    73 F.3d 232 (9th Cir. 1995) ......................................................................16, 21

*Anderson v. Creighton*
    483 U.S. 635 (1987)........................................................................................14

*Arpin v. Santa Clara Valley Transp. Agency*
    261 F.3d 912 (9th Cir. 2001) .....................................................................23, 25

*Awabdy v. City of Adelanto*
    368 F.3d 1062 (9th Cir. 2004) ........................................................................23

*Ayers v. City of Richmond*
    895 F.2d 1267 (9th Cir. 1990) ........................................................................21

*Bias v. Moynihan*
    508 F.3d 1212 (9th Cir. 2007) ...................................................................18, 22

*Bingham v. City of Manhattan Beach*
    341 F.3d 939 (9th Cir. 2003) ..........................................................................14

*Blankenhorn v. City of Orange*
  485 F.3d 463 (9th Cir. 2007) .................................................................16

*Boehme v. Loth*
  2008 WL 744829 *4 (N.D. Cal. March 18, 2008 [Illston, J.]) ...........................18, 19

*Borunda v. Richmond*
  885 F.2d 1384 (9th Cir. 1988) ...............................................................18

*Boyd v. Benton Cty.*
  374 F.3d 773 (9th Cir. 2004) ................................................................14

*Burrell v. McIlroy*
  464 F.3d 853 (9th Cir. 2006), *cert denied* .............................................12, 14

*Cady v. Dombrowski*
  413 U.S. 433 (1973)..........................................................................13

*Case v. Kitsap Cty. Sheriff's Dep't*
  249 F.3d 921 (9th Cir. 2001) ................................................................14

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)..........................................................................10

*Cf. Groh v. Ramirez*
  540 U.S. 551 (2004) ..........................................................................12

*Chimel v. California*
  395 U.S. 752 (1969) ..........................................................................19

*City of Los Angeles v. Heller*
  475 U.S. 796 (1986)..........................................................................24

*DeGrassi v. City of Glendora*
  207 F.3d 636 (9th Cir. 2000) ................................................................23

*Devenpeck v. Alford*
  543 U.S. 146 (2004)..........................................................................16

*Foti v. County of San Mateo et al.*
  2004 U.S. Dist. LEXIS 22714 (N.D.Cal. 2004) ............................................21

*Freeman v. City of Santa Ana*
  68 F.3d 1180 (9th Cir. 1995) .............................................................18, 23

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982)..........................................................................14

*Hart v. Parks*
  450 F.3d 1059 (9th Cir. 2006) ...............................................................16

*Haupt v. Dillard*
  17 F.3d 285 (9th Cir. 1994) ........................................................................21

*Horton v. California*
  496 U.S. 128 (1990)..................................................................................19

*John v. City of El Monte*
  515 F.3d 936 ...........................................................................................17

*KRL v. Estate of Moore*
  512 F.3d 1184 (9th Cir. 2008) ....................................................................15

*Lombardi v. City of El Cajon*
  117 F.3d 1117 (9th Cir. 1997) ....................................................................21

*Lujan v. National Wildlife Federation*
  497 U.S. 871 (1990)..................................................................................24

*Malley v. Briggs*
  475 U.S. 335 (1986) ..........................................................................14, 22

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986)................................................................................10

*Mincey v. Arizona*
  437 U.S. 385 (1978)..................................................................................13

*Monell v. Department of Social Services*
  436 U.S. 658 (1978)....................................................................2, 11, 24, 25

*Motley v. Parks*
  432 F.3d 1072 (9th Cir. 2005) ....................................................................12

*New York v. Quarles*
  467 U.S. 649 (1984)..................................................................................13

*Ohio v. Robinette*
  519 U.S. 33 (2003)...................................................................................15

*Ortiz v. Van Auken*
  887 F.2d 1366 (9th Cir. 1989) ....................................................................14

*Peng v. Mei Chin Penghu*
   335 F.3d 970 (9th Cir. 2003), *cert denied*, 124 S.Ct. 1506 (2004)............16, 17, 21

*Quintanilla v. City of Downey*
  84 F.3d 353 (9th Cir. 1996), *cert. denied*, 117 S.Ct. 972 (1997)...........................24

*Roe v. Sherry*
  91 F.3d 1270 (9th Cir. 1996) ....................................................................13

*Saucier v. Katz*
  533 U.S. 194 (2001).........................................................................................11, 14, 16

*Schneckcloth v. Bustamonte*
  412 U.S. 218 (1973)...............................................................................................12

*Smiddy v. Varney*
  665 F.2d 261 (9th Cir. 1981), *cert. denied*, 103 S.Ct. 65 (1982)........................22

*Taylor v. List*
  880 F.2d 1040 (9th Cir. 1989)..............................................................................11

*Terry v. Ohio*
  392 U.S. 1 (1968)...................................................................................................12

*United States v. $129,727.00 U.S. Currency*
  129 F.3d 486 (9th Cir. 1997), *cert. denied*
  *sub nom Trujillo v. United States*, 523 U.S. 1065 (1998)...................................16

*United States v. Cannon*
  29 F.3d 472 (9th Cir. 1994)...................................................................................12

*United States v. Cecil*
  457 F.2d 1178 (8th Cir. 1972)...............................................................................15

*United States v. Garcia*
  997 F.2d 1273 (9th Cir. 1993)...............................................................................12

*United States v. Hoffman*
  607 F.2d 280 (9th Cir. 1979).................................................................................13

*United States v. Hoyos*
  892 F.2d 1387 (9th Cir. 1989), *cert. denied,* 498 U.S. 825 (1990),
  *overruled on other grounds in United States v. Ruiz,* 257 F.3d 1030 (9th Cir. 2001)...............16

*United States v. Hunt*
  893 F.2d 1028 (9th Cir. 1990), *overruled on other grounds,*
  925 F.2d 1181 (9th Cir.), *cert. denied,* 502 U.S. 832 (1991).........................11

*United States v. Leon*
  468 U.S. 897 (1984)...............................................................................................11

*United States v. Nohara*
  3 F.3d 1239 (9th Cir. 1993)...................................................................................19

*United States v. Snipe*
  515 F.3d 947 (9th Cir. 2008).................................................................................15

*United States v. Stafford*
  416 F.3d 1068 (9th Cir. 2005).........................................................................13, 15

1

**Federal Statutes**

2

Federal Rules of Civil Procedure
   56(c) ...........................................................................................................................10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

In July 2005, officers of the San Francisco Police Department responded to multiple calls reporting escalating aggression, intimidation, and threats of violence by plaintiff Ronald Green against his landlord and co-tenants.  The officers took measured actions proportionate to the facts reported and observed, in an attempt to defuse the situation.

On July 1, 2005, the incident giving rise to the first claim for relief, one of plaintiff's co-tenants called 911 and reported that plaintiff was harassing and intimidating her.  The police officers had reasonable suspicion to detain plaintiff while they confirmed their information that there was an active warrant outstanding for plaintiff's arrest.  The officers were justified in seizing plaintiff's arsenal of loaded weapons for safekeeping.  The one officer who entered plaintiff's premises that day – Officer King – did so at plaintiff's express invitation.  Qualified immunity also shields the officers from suit, because they violated no clearly established law of which a reasonable officer in their position would have been aware.

On July 28, 2005, the incident underlying the second claim for relief, officers arrested plaintiff based on a report by landlord Ramon Bunag that plaintiff aimed a rifle at him and threatened to kill him, and had forcefully taken over a portion of the house to which plaintiff had no legal access.  The presence of a loaded rifle, and of plaintiff in the portion of the house that the officers knew was off-limits to plaintiff, corroborated Bunag's report.  Moreover, plaintiff exhibited a paranoid and delusional demeanor to the officers.  He ranted that his landlords were conspiring against him as part of a gang, that he had taken possession of the house "under the right of personal enjoyment," and that he was in the process of taking title to the property.  This presentation only heightened the officers' concern for the safety of those around plaintiff.  The officers reasonably determined that the facts known to them constituted probable cause that plaintiff had committed crimes, including trespass and making a threat with a deadly weapon.  The officers also had ample evidence that plaintiff posed a danger to others, justifying detention for a mental health evaluation under state law, an assessment that mental health professionals at San Francisco General Hospital later independently confirmed.  Again, qualified immunity also protects the officers from suit on this claim.

Plaintiff has no evidence that any police officer maliciously or fraudulently induced the criminal prosecution, or that any officer entered into any agreement with plaintiff's landlord or housemate, defeating the third and fourth claims for relief. Finally, the claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) fails for lack of any evidence of either a constitutional violation or of any such violation pursuant to an official policy or custom.

The officers acted to neutralize a volatile and potentially deadly situation, and they succeeded. They should not be subject to a trial for taking the actions any reasonable and responsible officer, confronted with the same facts and circumstances, would have taken. This Court should grant summary judgment in favor of the defendants.

## STATEMENT OF UNDISPUTED FACTS

San Francisco Police officers went to the single-family residence at 1 Santa Barbara Avenue, encountering plaintiff who lived there, at least three times in July 2005: on July 1, 3, and 28. The first and third incidents give rise to claims for relief in this action. We briefly describe the July 3 incident because it informed the officers' actions on July 28, 2005 .

## I.    JULY 1, 2005 INCIDENT

On the morning of July 1, 2005, defendant San Francisco Police Officer Jerry King was dispatched to 1 Santa Barbara Avenue, San Francisco. King Decl., ¶ 2. While traveling to that address, Officer King learned the following facts from the dispatcher: (1) a person named Ron had called "911" minutes earlier stating that a tenant rented a room at his address at 1 Santa Barbara Avenue, and was supposed to move out on July 1; (2) Ron stated that his tenant was still at the premises, and had locked Ron out of the kitchen; (3) a person named Esther called "911" a few minutes after Ron did, stating *she* was the landlord, and that the *tenant* named "Ron" was banging on her door at 1 Santa Barbara Avenue, telling her to open it; (4) the "911" call taker could hear a male yelling in the background, and banging on the door; (5) Esther stated she was aware Ron owned a gun, but did not see weapons at the time of the call; and (6) Esther was upstairs, and the tenant, Ron, lived downstairs. King Decl., ¶ 3.

Officer King arrived at 1 Santa Barbara at about 9:12 a.m. on July 1, 2005. The initial caller, plaintiff Ron Green, met the officer upon his arrival. He let Officer King inside his living unit.

Green Deposition ("Green Depo") at 217:7-218:6 (**Exhibit A** to Declaration of Donald P. Margolis ["Margolis Decl."]); King Decl., ¶ 4. After entering, Officer King immediately noticed a loaded rifle in an upright position, near the front door. He confiscated the weapon for his own and other officers' safety. King Decl., ¶ 4. Plaintiff acknowledges he had a loaded rifle near the front door, in a corner of the room. Green Depo at 230:12-16.

Plaintiff then told Officer King that his roommate or housemate, Esther Granizo, was upstairs, and that he had joint ownership of the property. Plaintiff also told the officer that Granizo was supposed to move out on that day. Officer King asked plaintiff if he had any other weapons. Plaintiff told the officer he had a 9-millimeter pistol under his shirt, on his belt. Green Depo at 220:10-18. Officer King seized the weapon, again for officer safety purposes. King Decl., ¶ 4. The gun was loaded. Green Depo at 221:14-20.

Fellow officers arrived at the scene. One of them, Officer James Drilon, ran an identification check on plaintiff. At about 9:27 a.m., he learned from headquarters that there was an outstanding warrant for plaintiff's arrest, for failure to appear in San Francisco County Superior Court on a speeding ticket. The officers received a computerized transmission of information concerning the warrant, advising them to call the San Francisco Sheriff's Department's Central Warrant Bureau to verify that the warrant was still active. Based on the information that a warrant was outstanding for plaintiff's arrest, Officer King placed him in handcuffs and detained him, pending further investigation. Officer King then called the Central Warrant Bureau. King Decl., ¶ 6. [1]

Before receiving a response from the Central Warrant Bureau, Officer King went upstairs, outside of plaintiff's earshot, and spoke further with Granizo. She told the officer she was the other person who called the police, advising the dispatcher that her tenant was banging on the door. She also told Officer King she had advised the dispatcher that her tenant, plaintiff, might own guns, although she had not seen one. Officer King asked Granizo if she was afraid of plaintiff, and she

---

[1] Defendants will submit a printout of the transmittal of warrant information as soon as the Court enters a protective order governing the handling of that record and the information contained in it, which is confidential criminal history information. On September 4, 2008, defendants submitted for Court consideration a form of stipulated protective order.

emphatically said "yes."  Granizo told Officer King that plaintiff was constantly harassing her, she had notified the police numerous times regarding plaintiff's actions, she felt intimidated by plaintiff's banging on the door that day and his demanding to use her kitchen, and he had threatened to damage her door.  She also told Officer King that in the past plaintiff had turned her electricity off and made loud noises throughout the day.  She mentioned she was in the process of evicting plaintiff, and she believed he was being vindictive in retaliation for the eviction efforts.  King Decl., ¶ 7.

Plaintiff admits that he did not hear the conversation between Granizo and Officer King, and knows nothing about what she told the officer.  Green Depo at 222:8-19, 219:20-25, 220:7-9.

Officer King then advised Sergeant Michael Williams by radio of the situation, and he came to the scene.  In a later conversation at the scene, plaintiff acknowledged he had banged on Granizo's door, claiming he was attempting to use the kitchen under his agreement with Granizo.  He also acknowledged that he was a tenant, not the landlord, and that he was being evicted.  Officer King asked plaintiff whether he had any other weapons, and he said "yes."  Green Depo at 220:10-18; King Decl., ¶ 10. He consented to the officers' searching his residence for weapons.  The officers located five weapons.  At Sergeant Williams's directive, and based on all of the facts recited above, Officer King confiscated the weapons for safekeeping.  Williams Decl., ¶ 10.  The weapons were later taken to the Taraval Police Station.  *Id.*

At the scene, Officer King eventually received a response to his inquiry with the Central Warrant Bureau.  He learned that the warrant for plaintiff was no longer active.  Accordingly, he promptly released plaintiff, unhandcuffing him.  At the time that he handcuffed and detained plaintiff based on the outstanding warrant, all of the information accessible to him revealed that the warrant was active and enforceable.  King Decl., ¶ 9.  Indeed, the warrant was not recalled until about 9:55 a.m. on July 1, 2005, which was about half an hour after Officer Drilon ran a warrant check.  Scannell Decl., ¶ 3, **Exh. A**.

The police advised plaintiff of the procedure he could follow to seek to retrieve the personal property the police had removed, including the firearms and ammunition.  Green Depo at 229:15-230:8.  Plaintiff did not follow that procedure; in fact, he has never tried to retrieve his property.  *Id.* at 230:9-11, 387:4-16, 388:7-11.

II.    **JULY 3, 2005 INCIDENT**

On July 3, 2005, San Francisco Police Officers Lorenzo Adamson and Thomas Abrahamsen were dispatched to 1 Santa Barbara Avenue, San Francisco, the same address as that involved in the July 1 incident.  The police dispatcher informed the officers that a woman named Esther had called for police service at about 2:20 p.m. that day, advising that someone had taken the security bars off of her windows and had padlocked another window, and that she was scared.  The dispatcher also informed the officers that there had been several prior calls from this location concerning a landlord-tenant dispute.  Adamson Decl., ¶ 2; Abrahamsen Decl., ¶ 2.

From earlier conversations with Officer King, these two responding officers knew about Officer King's response to the same address two days earlier, on July 1, 2005, and about that officer's removal of weapons from plaintiff's premises.  Adamson Decl., ¶ 3; Abrahamsen Decl., ¶ 3.

After the officers arrived at 1 Santa Barbara Avenue, Officers Adamson met with Granizo.  Granizo told Officer Adamson that she had come home at about 2:00 p.m. that day to find that the screws to two security bars on her rear windows were removed, and that she thought her tenant, Ronald Green, removed them.  Officer Adamson examined the window and found screws sitting on the windowsill, which apparently had been holding the security bars in place.  Granizo told Officer Adamson she thought plaintiff was harassing her because she was having him evicted, and that she was afraid of plaintiff.  Adamson Decl., ¶ 4.

Officer Adamson then spoke with plaintiff, who Officer Adamson learned resided in a downstairs unit at 1 Santa Barbara Avenue.  Plaintiff told Officer Adamson there was an ongoing dispute between him and Granizo concerning his living arrangement.  Officer Adamson prepared an incident report documenting the complaint and the interaction, but did not cite or arrest anyone on that date.  Adamson Decl., ¶ 5.

III.    **JULY 28, 2005 INCIDENT**

Later in the month, on the afternoon of July 28, 2005, Officers Adamson and Abrahamsen were again dispatched to 1 Santa Barbara Avenue.  They understood the person calling for police service was a man named Ramon, who they later came to understand was Ramon Bunag.  As they made their way to that address, they learned from the police dispatcher that Bunag had reported that

1   his tenant, plaintiff, had taken over possession of the building by force.  The dispatcher also reported

2   to the officers that plaintiff may have firearms at his premises, including a long rifle.  They also

3   learned from the dispatcher while en route that Bunag stated plaintiff had somehow worked his way

4   into Bunag's house, was now occupying the premises, and would not let Bunag into the house.

5   Abrahamsen Decl., ¶ 6; Adamson Decl., ¶ 6.

6       Officers Adamson and Abrahamsen arrived at 1 Santa Barbara Avenue at about 2:30 p.m.

7   They had in mind their prior contact with plaintiff earlier that month, on July 3, 2005, and Officer

8   King's recent removal of several firearms from plaintiff's residence. They recognized the house from

9   the prior contact.  Abrahamsen Decl., ¶ 7; Adamson Decl., ¶ 7.

10       Officer Abrahamsen knocked on the lower level door to the unit that he knew, from his prior

11   contact, that plaintiff occupied.  There was no answer at that door.  A few moments later, however,

12   Officer Abrahamsen saw the door to the upstairs main entrance open.  He understood that door did

13   *not* lead directly to plaintiff's living area, but rather led to the living area of someone else.  Plaintiff

14   appeared at that upstairs doorway.  Abrahamsen Decl., ¶ 8; Adamson Decl., ¶ 8; Green Depo at

15   283:13-24, 285:12-22.  This event tended to confirm the account the officers had received of plaintiff

16   having taken over the entire house, and heightened the officers' level of suspicion.  Abrahamsen

17   Decl., ¶ 8; Adamson Decl., ¶ 8.

18       Plaintiff came down the stairs to speak to Officer Abrahamsen.  At some point, Lieutenant

19   David Oberhoffer, Officer Abrahamsen's watch commander, arrived at the scene.  Officer

20   Abrahamsen summarized for the lieutenant the facts recited above.  Abrahamsen Decl., ¶ 9;

21   Oberhoffer Decl., ¶ 9.

22       Plaintiff then spoke with Officer Abrahamsen and Lieutenant Oberhoffer.  Plaintiff spoke in

23   what was, to the officers' view, a bizarre manner that made them believe he was paranoid and

24   delusional.  Plaintiff said that he had changed the locks on the house, as was his right, because it was

25   his house.  He also stated his landlords were conspiring against him and were part of a gang or

26   religious group, that he needed a gun to protect himself, that some unknown person was trying to

27   poison him, that he had taken possession of the premises "under the right of personal enjoyment," and

28

1  that he was in the process of taking title to the property, although it was "all very complicated."

2  Abrahamsen Decl., ¶ 10; Oberhoffer Decl., ¶ 6.

3      While Officer Abrahamsen and Lieutenant Oberhoffer were talking to plaintiff, Officer

4  Adamson walked slightly north of the property, to the property next door, to speak with Bunag, who

5  was standing there with Clarita Calabia, who Officer Adamson came to learn was another tenant at 1

6  Santa Barbara Avenue.  Adamson Decl., ¶ 9.  Bunag told Officer Adamson that plaintiff was in

7  Bunag's house, in an area where he was not supposed to be.  Bunag also told Officer Adamson that

8  plaintiff had threatened Bunag with a gun, and that plaintiff was crazy.  Bunag specifically told

9  Officer Adamson that plaintiff said:  "From now on I am the owner and if you try to move in you're

10  dead out."  *Id.*.

11      After speaking with Bunag and Calabia, Officer Adamson walked back to the area where

12  Lieutenant Oberhoffer and Officer Abrahamsen had been speaking with plaintiff, and told the other

13  officers Bunag had said that plaintiff had threatened him with a gun, and had said that plaintiff was

14  crazy.  He also told the other officers Bunag had told him that Bunag owned the house at 1 Santa

15  Barbara Avenue, and that plaintiff was occupying a portion of the house that he was not supposed to

16  occupy.  Officer Adamson handcuffed plaintiff.  Adamson Decl., ¶ 10; Abrahamsen Decl., ¶ 11;

17  Oberhoffer Decl., ¶ 7.

18      Officer Abrahamsen asked plaintiff if he had weapons in his living area.  He said he had a

19  rifle in his garage, next to the toolbox.  Green Depo at 294:23-25; Abrahamsen Decl., ¶ 12.  Officer

20  Abrahamsen asked plaintiff if he could enter the living area to search for weapons, and plaintiff said

21  yes.  Green Depo at 295:4-8; Abrahamsen Decl., ¶ 12.  Officer Abrahamsen entered the garage, found

22  the rifle where plaintiff said it was, and took custody of it.  He inspected the rifle, and found one

23  round of ammunition in the chamber and four in the magazine.  The rifle had no functioning lock.

24  During his own search of the premises, Lieutenant Oberhoffer found live ammunition in plaintiff's

25  unit, including 17 boxes of ammunition for .38-caliber pistols, .357 magnums, and 9-millimeter

26  weapons.  Oberhoffer Decl., ¶ 8; Abrahamsen Decl., ¶ 12.

27      Plaintiff was arrested on charges including trespassing and aggravated assault with a gun.

28  Based on his assessment of plaintiff's behavior and statements, and the information received from

1    Bunag about plaintiff's threats, Lieutenant Oberhoffer believed plaintiff was a danger to himself or to

2    others, justifying his arrest under Welfare and Institutions Code section 5150.  Lieutenant Oberhoffer

3    therefore authorized the seizure of his weapons, weapons, and other paraphernalia including holsters,

4    as part of a detention for mental health evaluation.[2]  Oberhoffer Decl., ¶ 9.

5         Plaintiff was transported to Taraval Police Station for booking.  Adamson Decl., ¶ 12.  He was

6    promptly transferred to the San Francisco General Hospital Jail Psychiatric Services department to be

7    evaluated under Welfare and Institutions Code section 5150.  *See* Complaint, ¶ 27 (Margolis Decl.,

8    **Exh. B**).  Dr. Erika Falk, a mental health professional employed at the time by the San Francisco

9    General Hospital's Jail Psychiatric Unit, who holds a doctorate in clinical psychology and is a

10   licensed psychologist, conducted an independent evaluation of whether plaintiff should be held for

11   observation as a danger to others, a danger to himself, or gravely disabled within the meaning of

12   section 5150.  Falk Deposition ("Falk Depo") at 8:14-16, 8:21-25, 11:19-12:1, 16:18-21 (Margolis

13   Decl., **Exh. C**).  She assessed plaintiff as currently at imminent risk for dangerousness to others.  *Id.*

14   at 22:21-23:2.  She accordingly instituted a hold on plaintiff for psychiatric evaluation under section

15   5150.  Falk Depo at 28:4-10.   She testified that she made an independent judgment.  *Id.* at 28:24-

16   30:8; see *id.* at 40:2-4.[3]

17        Plaintiff alleges he was incarcerated for 85 days in the San Francisco County Jail, awaiting

18   trial on the criminal charges.  Complaint, ¶ 51.

19

20   _____

21        [2] Section 5150 provides in relevant part:  "When any person, as a result of mental disorder, is
     a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the
22   attending staff, as defined by regulation, of an evaluation facility designated by the county … may,
     upon probable cause, take, or cause to be taken, the person into custody and place him or her in a
23   facility designated by the county and approved by the State Department of Mental Health as a facility
     for 72-hour treatment and evaluation."

24        [3] Dr. Falk based her assessment in part on her own observation of plaintiff, who displayed
     what Dr. Falk considered to be a delusional system involving his housemates and possibly his ex-
25   girlfriend's family and neighbors, according to which he claimed that those individuals were
     poisoning his food, giving him rashes with a powder, moving and scratching his objects, and putting
26   hair in his food.  She quoted him as saying:  "They are committing fraud and using an outsider to pay
     expenses.  Mentally they assigned a different person to me.  It enhances their viewpoint, and I
27   become the scapegoat".  She understands there is a link between a paranoid way of thinking and a
     propensity to harm others.  Falk Depo at 23:3-25:2.

28

Plaintiff was re-booked, and ultimately charged with making a terrorist threat in violation of California Penal Code section 422 (felony); exhibiting a deadly weapon in violation of California Penal Code section 417(a) (misdemeanor); and assault with a firearm in violation of California Penal Code section 245(a)(2) (felony). In a preliminary hearing in San Francisco Superior Court on August 12, 2005, plaintiff vigorously contested that there was probable cause for his arrest and detention. The court held that there was probable cause to believe that plaintiff had committed the crimes with which he was charged. Preliminary Hearing Transcript at 46:13-17 (Margolis Decl., **Exh. D**). The court also denied plaintiff's suppression motion and request that he be released on his own recognizance. *Id.* at 47:14-27.

## SUMMARY OF CLAIMS

Plaintiff asserts five claims for relief. In his first claim, he alleges that on July 1, 2005, defendants Sergeant Williams and Officer King violated his Fourth Amendment rights to be free from unreasonable searches and seizures. Complaint, ¶¶ 36-37. He apparently alleges that these officers arrested or detained him without probable cause or reasonable suspicion, entered his living unit without a warrant or consent, and wrongfully confiscated his gun collection. Complaint, ¶¶ 21, 36.[4]

In his second claim for relief, plaintiff alleges that on July 28, 2005, defendants Lieutenant David Oberhoffer, and Officers Thomas Abrahamsen and Lorenzo Adamson, falsely arrested him, entered his residence without a warrant or permission, and improperly seized his rifle and ammunition. Complaint, ¶¶ 25-26, 40.

In his third claim for relief, again arising from the July 28, 2005 contact, plaintiff alleges that Officers Adamson and Abrahamsen and Lieutenant Oberhoffer submitted police reports containing false statements and material omissions, thereby interfering with the independent judgment of prosecuting attorneys and causing plaintiff's criminal prosecution. Complaint, ¶¶ 28, 44.

In his fourth claim for relief, plaintiff alleges that all five defendant police officers conspired with Bunag and Granizo to implicate, arrest, and cause his conviction on false criminal charges.

---

[4] Plaintiff also names two private defendants Ramon Bunag and Esther Granizo in his first four claims for relief. This office does not represent those defendants. Neither of these defendants has appeared in this action, and on April 14, 2008, the clerk of court entered defaults against them.

Complaint, ¶ 49.  Further, he alleges the officers fabricated false and misleading evidence, presented

perjured testimony, and withheld or concealed exculpatory evidence, leading to his false arrest and

imprisonment.  *Id.*, ¶ 50.

In his final claim for relief, misdenominated the eleventh claim, plaintiff alleges he suffered

constitutional harm as a result of the City's customs, policies, patterns or practices, including

deliberate indifference in hiring, supervision, training, and discipline; failure to fairly and fully

investigate allegations of criminal conduct; and failure to train officers with respect to intervention in

landlord-tenant disputes.  *Id.*, ¶¶ 57-58.[5]

## ARGUMENT

Summary judgment is appropriate in this case because there is no genuine issue as to any

material fact and defendants are entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Defendants bear the initial burden of demonstrating the absence of a genuine issue of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the plaintiff must do more than

show that there is "some metaphysical doubt as to the material facts."  *Scott v. Harris*, 127 S.Ct. 1769,

1775 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587

(1986).  "When opposing parties tell two different stories, one of which is blatantly contradicted by

the record, so that no reasonable jury could believe it, a court should not adopt that version of facts

for purposes of ruling on a motion for summary judgment."  *Id.*  Moreover, defendants need not

negate or disprove matters on which plaintiff will have the burden of proof at trial – it suffices to

point out the absence of evidence to support plaintiff's case.  *Celotex Corp.*, 477 U.S. at 325.

**I.    THE FIRST CLAIM FOR RELIEF UNDER THE FOURTH AMENDMENT BASED ON THE JULY 1 INCIDENT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT.**

In his first claim for relief, plaintiff sues Sergeant Williams and Officer King for an unlawful

detention or arrest, entry into his unit, and seizure of his weapons on July 1, 2005.  None of the

---

[5] On or about November 28, 2007, the parties filed a stipulation for dismissal with prejudice of plaintiff's fifth claim for relief for intentional infliction of emotional distress.

claims has merit.[6]  The defendant officers in this case are also entitled to qualified immunity.  The threshold question in determining qualified immunity is whether the facts show that the officers' conduct violated plaintiff's constitutional rights.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  Although plaintiff cannot present sufficient facts to make out a constitutional claim under the Fourth Amendment, even if he could, he cannot show that it was clearly established law that the officers' conduct was unlawful in the circumstances of this case.  *Id.*

**A.    The Officers Did Not Violate Plaintiff's Fourth Amendment Rights On July 1, 2005**

Plaintiff alleges that on July 1, Officer King and Sergeant Williams falsely detained or arrested him, unlawfully entered his premises, and wrongfully seized his guns and ammunition.  The undisputed facts show that the officers did not violate plaintiff's constitutional rights.

**1.    Plaintiff's Short Detention To Verify an Outstanding Warrant Did Not Violate His Fourth Amendment Rights.**

Sergeant Williams was not involved in plaintiff's brief detention on July 1, 2005, and on that ground alone he cannot be liable for false detention or arrest.  *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (no liability without personal participation, including for supervisors.)

Officer King relied on the outstanding warrant for plaintiff's arrest of which he became aware when the officers did an electronic identification check of plaintiff.  Officer King relied in good faith on the warrant information.  His objective good faith reliance on the warrant bars liability for wrongful detention or arrest.  *United States v. Hunt,* 893 F.2d 1028, 1031-32 (9th Cir. 1990), *overruled on other grounds*, 925 F.2d 1181 (9th Cir.), *cert denied,* 502 U.S. 832 (1991); *see United States v. Leon*, 468 U.S. 897, 922 (1984) (when officer acts with objective good faith in obtaining search warrant and acts within its scope, exclusionary rule does not apply if it emerges that probable

---

[6] Plaintiff also purports to sue the City in his first through fourth claims for relief without alleging an unconstitutional policy, custom, or practice, as required under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978) (rejecting municipal liability under section 1983 on the basis of respondeat superior, and requiring a showing that constitutional harm resulted from implementation of unconstitutional policy or custom).  We reserve our discussion of plaintiff's claim against the City to the section of this memorandum addressing plaintiff's final claim for relief, in which he makes allegations under *Monell* for the first time.

cause was lacking). The outstanding warrant was not obviously defective on its face. *Cf. Groh v. Ramirez*, 540 U.S. 551, 562 (2004).

Even if the officers had done a full-blown arrest of plaintiff, rather than a mere investigative detention, probable cause would have supported the arrest. Granizo had reported that she was afraid of and intimidated by plaintiff, who was constantly harassing her and who had threatened to damage her door. Plaintiff admitted he was carrying a loaded pistol when Officer King spoke to him, and there was a loaded rifle next to his door. Under these circumstances, the officers had probable cause to arrest plaintiff for harassment, or at the least, reasonable suspicion to detain him while they investigated the situation further. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968).

### 2. Plaintiff Consented To The Officers' Entry Into His Premises.

Plaintiff cannot complain of the officers' entry into his living unit to which he freely consented. When Officer King arrived on the scene, he did not have his gun drawn. Plaintiff, who had summoned the officers in the first place by calling "911," met Officer King and invited him inside his living unit. Officer King did not handcuff plaintiff until after plaintiff invited Officer King into his living area. Under these circumstances, plaintiff's consent to Officer King's entry into his living unit was clearly voluntary. *See United States v. Garcia*, 997 F.2d 1273, 1282 (9th Cir. 1993). There are simply no facts to support a finding that Officer King's entry into plaintiff's living area was the product of duress or coercion. *See Schneckcloth v. Bustamante*, 412 U.S. 218, 227 (1973) (whether consent to search was "voluntary" depends on "the totality of all the circumstances."). Plaintiff was not startled or surprised into giving his consent – he invited Officer King into his living area after calling 911 and requesting a police dispatch. Officer King did not threaten plaintiff with violence or false charges. *Burrell v. McIlroy*, 464 F.3d 853, 859 (9th Cir. 2006), *cert denied*; *cf. Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005).

Further, at no point did plaintiff revoke his consent to the officers' presence in his living area. Plaintiff's failure to object to the continuation of the officers' search after he initially invited the officers into his living area is an indication that the search was "within the scope of the initial consent." *United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994).

### 3.    Confiscating Plaintiff's Weapons Did Not Violate His Fourth Amendment Rights.

The officers acted reasonably under the Fourth Amendment when they removed plaintiff's firearms on July 1 to protect public safety.  Protection of public safety provides an exception to the warrant requirement.  *See, e.g., New York v. Quarles*, 467 U.S. 649, 656-58 (1984) (officer's questions about where suspect had discarded gun were exception to *Miranda* requirement because public safety required officers to retrieve gun); *Cady v. Dombrowski*, 413 U.S. 433, 447-48 (1973) (finding that officer's opening of car's trunk did not violate Fourth Amendment because officer reasonably believed trunk contained gun that could be a threat to public safety).  Here, where plaintiff's firearms were loaded and Granizo told the officers she was afraid of plaintiff, who had been harassing and intimidating her, the officers had ample justification for the seizure.  Moreover, the officers did not enter into plaintiff's living area in order to seize evidence.  *Cf. United States v. Hoffman*, 607 F.2d 280 (9th Cir. 1979).  That the officers could have taken other measures instead of seizing the firearms does not make the seizure illegal.  *Cady*, 413 U.S. at 447 ("The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable.").

Once inside plaintiff's living area, the officers were entitled to seize any evidence that was in plain view.  *Mincey v. Arizona*, 437 U.S. 385, 393 (1978).  "To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent."  *Roe v. Sherry,* 91 F.3d 1270, 1272 (9th Cir. 1996).  Here, Officer King was lawfully in plaintiff's living area, and he and Sergeant Williams had probable cause to believe that the weapons and ammunition the officers seized were illegal, unlawful, or associated with criminal activity.  *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005).

### B.    The Officers Are Entitled to Qualified Immunity.

Assuming for argument's sake that plaintiff's constitutional rights were violated, the Court must still find that the constitutional right was clearly established.  A right is "clearly established" for qualified immunity purposes if "the contours of the right [are] sufficiently clear that [at the time of

1   the alleged unlawful action is taken] a reasonable official would understand that what he is doing

2   violates that right." *Saucier*, 533 U.S. at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640

3   (1987)). "In other words, an officer who makes a reasonable mistake as to what the law requires

4   under a given set of circumstances is entitled to the immunity defense." *Boyd v. Benton Cty.,* 374

5   F.3d 773, 781 (9th Cir. 2004) (citing *Saucier*, 533 U.S. at 205).

6                    **1.      Officer King Enjoys Immunity For the Detention.**

7          Even if the above facts did not establish probable cause for plaintiff's arrest on July 1, 2005,

8   Officer King acted reasonably and is therefore entitled to qualified immunity.  *See Harlow v.*

9   *Fitzgerald*, 457 U.S. 800 (1982).  Officer King detained plaintiff only long enough to verify the

10  warrant's validity.  This is not a case of an officer reasonably believing that an inactive warrant was

11  actually active – in this case the warrant *was* active when the officers first ran the identification

12  check.  The state court recalled the warrant, obviously after prompting from the Central Warrant

13  Bureau, which itself was triggered by the officers' inquiry.  Once Officer King received notification

14  that the warrant was no longer active, he promptly released plaintiff from custody.  It is well

15  established that officers are entitled to qualified immunity for a detention or arrest pursuant to a

16  facially valid warrant.  *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *Bingham v. City of Manhattan*

17  *Beach*, 341 F.3d 939, 952-53 (9th Cir. 2003) (affirming grant of qualified immunity for detention to

18  verify a warrant); *see also Ortiz v. Van Auken*, 887 F.2d 1366 (9th Cir. 1989).  Here, plaintiff cannot

19  contest the facts underlying the warrant, or the reasonableness of checking his identification, which

20  turned up the warrant.  *See Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 926 (9th Cir. 2001).

21                   **2.      Officer King Enjoys Qualified Immunity For the Entry.**

22         Officer King is entitled to qualified immunity for his entrance into plaintiff's living area on

23  July 1, 2005 because "a reasonable officer in his position would not have been on notice that

24  [plaintiff's] consent was in any way involuntary."  *Burrell v. McIlroy*, 464 F.3d 853, 859 (9th Cir.

25  2006) (granting qualified immunity for search where plaintiff may have misunderstood detective's

26  statement regarding warrant).  Officer King had no way of knowing that plaintiff's consent was

27  involuntary when plaintiff, who summoned the police presence in the first place, invited Officer King

28  into his living area.

1

2

### 3.    Sergeant Williams and Officer King Enjoy Qualified Immunity For the Removal of Firearms.

Officer King and Sergeant Williams reasonably believed that plaintiff's arsenal of firearms was contraband that could be lawfully confiscated.  The officers were not required to *know* that plaintiff's arsenal was illegal.  *Stafford*, 416 F.3d at 1076 (citing *United States v. Cecil*, 457 F.2d 1178, 1180 (8th Cir. 1972)).  Plaintiff was carrying a concealed and loaded 9-millimeter pistol, Granizo had told the officers that plaintiff was constantly harassing her and that she felt intimidated and scared of plaintiff, and the officers knew there was an outstanding warrant for plaintiff's arrest. *See id.* at 1077 (holding that officers reasonably believed that rifles and ammunition found in empty apartment were illegal).  The officers were neither "plainly incompetent" nor did they "knowingly violate the law" when they seized plaintiff's firearms under these circumstances.  *See KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008) (citations omitted).

In addition, Officer King and Sergeant Williams reasonably believed that they could seize plaintiff's firearms in order to protect others from serious harm.  *United States v. Snipe,* 515 F.3d 947, 952 (9th Cir. 2008).  In determining whether the officers were objectively reasonable in concluding that plaintiff's arsenal posed a serious threat to individuals, this Court must look to the totality of the circumstances.  *Id .*(citing *Ohio v. Robinette*, 519 U.S. 33, 39 (2003)).  There is no bright-line rule. *Id.*  The officers responded to two emergency calls made from 1 Santa Barbara on July 1.  *See id.* at 953 (holding officers had objectively reasonable basis to believe there was a need to protect people from harm when responding to emergency call).  Once there, Officer King learned that plaintiff had more than one loaded weapon, and that plaintiff scared and intimidated his upstairs neighbor.

## II.    THE SECOND CLAIM FOR RELIEF UNDER THE FOURTH AMENDMENT BASED ON THE JULY 28, 2005 INCIDENT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT.

### A.    The Officers Did Not Violate Plaintiff's Fourth Amendment Rights on July 28, 2005.

Plaintiff's second claim for relief for false arrest and wrongful seizure of his rifle and ammunition on July 28, 2005 fares no better.

### 1.    The Officers Had Probable Cause to Arrest Plaintiff on July 28, 2005.

The officers are entitled to summary judgment on plaintiff's Fourth Amendment false arrest claim based on his arrest on July 28, 2005 because the undisputed facts demonstrate that the officers' conduct did not violate plaintiff's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This Court can decide whether probable cause existed when material facts are not in dispute, even if the plaintiff disputes what inferences may properly be drawn from the undisputed facts. *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003), *cert denied*, 124 S.Ct. 1506 (2004). This Court is required to "view the facts and draw reasonable inferences in the light most favorable" to plaintiff "only if there is a 'genuine' dispute as to those facts." *Scott*, 127 S.Ct. at 1776; *see Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006).

The core probable cause requirement is that "under the totality of the circumstances, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *Hart*, 450 F.3d at 1066 (citations omitted). Officers are not required to be "legal technicians," but merely "prudent people." *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer[s] at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (citation omitted). The officers' "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153.

"Probable cause may be based on the collective knowledge of all of the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom." *United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir. 1989), *cert. denied,* 498 U.S. 825 (1990), *overruled on other grounds in United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001); *accord United States v. $129,727.00 U.S. Currency*, 129 F.3d 486, 489 (9th Cir. 1997), *cert. denied sub nom Trujillo v. United States*, 523 U.S. 1065 (1998).

It is undisputed that Officers Adamson and Abrahamsen, and Lieutenant Oberhoffer, were collectively aware of the following facts that established probable cause for plaintiff's arrest for assault with a weapon and trespass, and commitment for a mental health evaluation under California Welfare and Institutions Code section 5150: (1) Bunag reported to Officer Adamson that plaintiff had threatened him with a gun, telling him "from now on I am the owner and if you try to move in you're dead out"; (2) Bunag told Officer Adamson that plaintiff was crazy; (3) the officers observed plaintiff respond to their knocking on a downstairs door by opening an upstairs door that the officers knew did not lead to plaintiff's living area; (4) the officers observed plaintiff's demeanor, which included ranting that he had taken possession of the house under "the right of personal enjoyment," and that he had the right to change the locks on all of the doors; (5) plaintiff admitted to having a weapon in his unit, which he allowed the officers to enter to retrieve; and (6) plaintiff had a mini-arsenal of ammunition stored in his unit.  Plaintiff was not a party to Officer Adamson's conversation with Bunag, and therefore cannot contest the contents of this conversation.  Whether Bunag misstated any fact to Officer Adamson is irrelevant because it does not change the facts known to Officer Adamson and the other officers at the time, including the presence of a rifle, plaintiff's appearance in the portion of the house the officers understood was not his to occupy, plaintiff's delusional rants, facts gleaned from the contacts earlier in the month concerning plaintiff's arsenal of weapons, and the obvious fear of the threatened reporting parties.  An officer is required to make only a reasonable investigation in the field.  See *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978-79 (9th Cir. 2003); *John v. City of El Monte¸* 515 F.3d 936, 940-41.  This investigation amply satisfied that requirement.

In addition to the probable cause to arrest plaintiff for assault with a weapon and trespass, the officers had probable cause to arrest plaintiff under section 5150.  Probable cause exists under section 5150 if the officers know facts "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." *People v. Triplett*, 144 Cal.App.3d 283, 287-90 (1983).  As described above, the officers had specific and articulable facts, taken together with rational inferences from those facts, reasonably warranting a strong suspicion that plaintiff was mentally disordered and a danger to others.  *Id*.  The prior incidents heightened the officers' suspicion that plaintiff was mentally

1  disordered. "Each case must be decided on the facts and circumstances presented to the officer at the

2  time of the detention and the officer is justified in taking into account the past conduct, character, and

3  reputation of the detainee." *Id*. (citation omitted).

4  This case is closely analogous to *Bias v. Moynihan*, 508 F.3d 1212 (9th Cir. 2007) in which

5  the Ninth Circuit found probable cause for an arrest under California Welfare and Institutions Code

6  section 5150 when plaintiff told the officer that her neighbors were "out to get her," a neighbor

7  reported to the officer that plaintiff was constantly accusing her "of plotting to ruin [plaintiff's] life,"

8  plaintiff's thoughts were disconnected and she was visibly angry and appeared agitated, and the

9  officer had observed plaintiff's "disturbing behavior" on an earlier occasion. *Id.* at 1221 (citing

10  *People v. Triplett,* 144 Cal.App.3d 283, 288 (1983)).

11  That plaintiff was later acquitted of the crimes for which he was arrested on July 28, 2005 has

12  no bearing on whether the officers had probable cause to arrest him for those crimes. *Borunda v.*

13  *Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988) ("This court would have been inclined to exclude the

14  evidence of acquittals altogether. The state's failure to prove guilt beyond a reasonable doubt does not

15  mean in connection with the arrests that it did not meet the lesser probable cause standard--a

16  reasonable belief that an offense has been committed and that the criminal defendant committed the

17  crime."); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("[T]he mere fact a

18  prosecution was unsuccessful does not mean it was not supported by probable cause.")

### 2. California Welfare and Institutions Code Section 8102 Authorized the Officers to Seize Plaintiffs' Firearms.

20  Because the officers had probable cause to detain plaintiff pursuant to California Welfare and

21  Institutions Code section 5150, the search and seizure of the firearms from plaintiff's residence did

22  not violate plaintiff's Fourth Amendment rights. *Boehme v. Loth*, 2008 WL 744829 *4 (N.D. Cal.

23  March 18, 2008 [Illston, J.]). Confiscation of plaintiff's firearm was not only warranted, but it was

24  *required* by section 8102 of the California Welfare and Institutions Code. Section 8102 reads, in

25  relevant part:

26  
27  Whenever a person, who has been detained or apprehended for examination of
his or her mental condition…is found to own, have in his or her possession or
under his or her control, any firearm whatsoever, or any other deadly weapon,
the firearm or deadly weapon shall be confiscated by any law enforcement

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

agency or peace officer, who shall retain custody of the firearm or other deadly weapon.[7]

In this case, where based on specific, articulated facts, plaintiff appeared paranoid and delusional, appeared to be a danger to others, and admitted to owning a rifle that the officers had probable cause to believe he used to threaten Bunag, the officers were under a duty to confiscate plaintiff's weapons. *See Boehme*, 2008 WL at *3 (holding that officers had probable cause to detain plaintiff and seize his firearms when they had information that plaintiff possessed firearms in his home and previously stated that he "heard little people").

Even if the officers were not justified in removing weapons under section 8102, doing so did not violate plaintiff's Fourth Amendment rights. The "search" of which plaintiff complains was merely Officer Abrahamsen's entrance into the garage area of 1 Santa Barbara to confiscate a rifle. Plaintiff gave the officers permission to search for weapons in his living area and even told Officer Abrahamsen where the rifle was located. Green Depo at 295:4-8; Abrahamsen Decl., ¶ 12. Even if plaintiff had not given his valid consent to the officer's entrance into the garage, he has no standing to complain about it. *United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993) (holding that "an apartment dweller has no reasonable expectation of privacy in the common areas of the building whether the officer trespasses or not."). "Incriminating evidence in plain view can be seized if the officer does not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* (citing *Horton v. California*, 496 U.S. 128, 136 (1990)). It was "immediately apparent" to the officers that the rifle was incriminating, as Bunag told the officers that plaintiff had pointed a rifle at him. *Id.*

The officers' search of plaintiff's living area also did not implicate the Fourth Amendment because officers were entitled to make a "search incident arrest" of the area within plaintiff's control to look for weapons. *Chimel v. California*, 395 U.S. 752 (1969). The plaintiff's living area was clearly the area of 1 Santa Barbara within plaintiff's immediate control.

---

[7] *See Rupf v. Yah*, 85 Cal.App.4th 411 (2000) (upholding constitutionality of section 8102).

### 3.    Plaintiff's Claims For False Arrest And Unlawful Search On July 28, 2005 Are Barred By The Doctrine Of Collateral Estoppel, Or Issue Preclusion.

As noted, plaintiff faced charges of making a terrorist threat, exhibiting a deadly weapon, and assault with a firearm. In a preliminary hearing in San Francisco Superior Court on August 12, 2005, plaintiff vigorously contested that there was probable cause for his arrest and detention and moved to suppress the guns and ammunition seized from 1 Santa Barbara. Ramon Bunag and Officer Abrahamsen testified at the hearing. Margolis Decl., **Exh. D**. The full, fair and final litigation of the issues of false arrest and unlawful search at the preliminary hearing bar relitigation here.

The state court judge heard essentially the same testimony bearing on plaintiff's threatening conduct that defendants present in this motion. Bunag testified that he went to 1 Santa Barbara on July 28 because Clarita Calabia told him that plaintiff had taken possession of the property by force. Margolis Decl., **Exh. D** at 3:19-4:11. When he arrived at the property, Bunag found that his keys did not work to open the security doors on the outside of the building. *Id.* at 4:19-28. Bunag then noticed that plaintiff was upstairs inside the building and was pointing a rifle at Bunag. Bunag testified that plaintiff said, "From now on, I am the owner of this property. If you try to move in, you're dead out." *Id.* at 5:1-5, 7:7-10. Bunag also testified that plaintiff was not supposed to have access to the upper portion of the property. Bunag described plaintiff holding a long rifle pointing directly at his face. Bunag testified that he immediately ran and called the police. *Id.* at 6:5-7:6.

Officer Abrahamsen testified that on July 28, 2005 he responded to a call regarding a property dispute in which a gun was involved at 1 Santa Barbara. Margolis Decl., **Exh. D** at 29:13-18. When Officer Abrahamsen arrived at the property, plaintiff approached him from the upstairs. *Id.* at 30:12-22. Officer Abrahamsen asked plaintiff if he had a rifle, and plaintiff said yes. *Id.* at 30:26-31:1. Officer Abrahamsen then asked him where the rifle was, and whether he could go into the building to get the rifle. *Id.* at 31:2-7. Plaintiff gave his consent and Officer Abrahamsen retrieved a loaded rifle from the garage. *Id.* at 31:12-18.

Plaintiff's counsel thoroughly cross-examined both Bunag and Officer Abrahamsen. Margolis Decl., **Exh. D** at 10-28 & 34-44.

1      Judge Lucy Kelly McCabe held there was probable cause to believe that plaintiff had

2 committed the crimes charged. Margolis Decl., **Exh. D** at 46:13-17. The court also denied plaintiff's

3 suppression motion and request for release on own recognizance. *Id.* at 47:14-27.

4      The doctrine of collateral estoppel, or issue preclusion, prevents plaintiff from relitigating the

5 probable cause for his arrest and the lawfulness of the search in this case. The doctrine of collateral

6 estoppel applies to civil suits brought under section 1983. *Allen v. McCurry*, 449 U.S. 90, 105 (1980)

7 (state court suppression hearing may provide full and fair opportunity to litigate a section 1983

8 claim). The probable cause determination at a preliminary hearing is final and conclusive and

9 constitutes a full and fair hearing under California law. *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir.

10 1994); *Foti v. County of San Mateo et al.*, 2004 U.S. Dist. LEXIS 22714, *9 (N.D.Cal. 2004). The

11 California Supreme Court has held that "any issue necessarily decided in a prior preliminary criminal

12 proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action."

13 *Teitelbaum Furs, Inc. v. Dominion Ins. Co. Ltd.,* 58 Cal.2d 601, 607 (1962). Suppression rulings

14 followed by a conviction or an acquittal have collateral estoppel effect under California law.

15 *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1121 (9th Cir. 1997); *see also Ayers v. City of*

16 *Richmond*, 895 F.2d 1267, 1271-72 (9th Cir. 1990).

17      As described above, the evidence adduced at plaintiff's preliminary hearing was available to

18 the officers when they arrested plaintiff and searched the premises at 1 Santa Barbara. Therefore, the

19 issues decided at the preliminary hearing are identical to the issues plaintiff raises here. Plaintiff's

20 counsel zealously fought the probable cause issue at the preliminary hearing and also proceeded with

21 a motion to suppress. *See e.g. Foti*, 2004 U.S. Dist. LEXIS at *11 (granting summary judgment on

22 claim for false arrest where plaintiff maintained silence at his preliminary hearing). Plaintiff suffered

23 final adverse rulings. Collateral estoppel is completely appropriate in this case. *See Haupt*, 17 F.3d

24 at 289-90.

25      **B.**     **The Officers Are Entitled to Qualified Immunity.**

26      Even absent probable cause, the officers are entitled to qualified immunity for their actions on

27 July 28 because "reasonable police officer[s] could have believed that [their] conduct was lawful, in

28 light of the clearly established law and the information" they possessed. *Peng*, 335 F.3d at 980. The

officers are immune from suit unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded" that there was probable cause that plaintiff had committed a crime. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[I]f officers of reasonable competence could disagree…immunity should be recognized." *Id.* at 341. Since the officers were neither "plainly incompetent," nor did they "knowingly violate the law," they are entitled to qualified immunity. *Id.*

As in *Bias*, reasonable officers would have believed they had probable cause to detain plaintiff under section 5150. *See Bias*, 508 F.3d at 1220-21 (granting qualified immunity for arrests of plaintiff under section 5150 on two different occasions). As the officers are entitled to qualified immunity for plaintiff's arrest on July 28, they are by extension entitled to qualified immunity for the confiscation of his weapons on the basis of section 8102. Because the officers reasonably believed they had probable cause to detain plaintiff under section 5150, they reasonably believed that section 8102 applied.

## III.    THE THIRD CLAIM FOR RELIEF FOR MALICIOUS PROSECUTION UNDER THE FOURTH AMENDMENT FAILS BECAUSE PLAINTIFF CAN PRESENT NO EVIDENCE THAT THE DEFENDANT OFFICERS ACTED WITH MALICE.

The filing of a criminal complaint tends to undermine a claim of malicious prosecution. Generally, the "[f]iling of a criminal complaint immunizes investigating [police] officers … from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *cert. denied*, 103 S.Ct. 65 (1982). The filing of charges in most circumstances "break[s] the chain of causation between an arrest and a prosecution." *Id.* at 267.

A plaintiff may recover damages for malicious prosecution under section 1983 only by rebutting the presumption of independent judgment. The plaintiff must present evidence that the defendant officers acted with malice. *Smiddy¸* 665 F.2d at 267. Primary examples of malice include a showing that officers pressured or caused the district attorney "to act contrary to his independent judgment," or presented information to the district attorney that the officers knew to be false." *Id.* at 266-67. In other words, evidence that officers induced a criminal prosecution "by fraud, corruption,

1    perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith" could rebut the

2    presumption. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

3          Defendants are confident that plaintiff can and will present no evidence that any defendant

4    officer pressured or knowingly presented false information to the district attorney, or that any

5    defendant exhibited conduct suggesting malice, fraud, or corruption sufficient to defeat summary

6    judgment.  In addition, plaintiff can present no evidence that any officer initiated criminal

7    proceedings "for the purpose of denying [plaintiff] equal protection or another specific constitutional

8    right," as required to prove a section 1983 claim for malicious prosecution. *Freeman v. City of Santa*

9    *Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

10   **IV.    THE FOURTH CLAIM FOR RELIEF FOR CONSPIRACY FAILS FOR THE SAME**
        **REASONS THE FIRST THREE CLAIMS FOR RELIEF FAIL, AND BECAUSE**
11      **PLAINTIFF HAS NO EVIDENCE OF A CONSPIRACY.**

12          Plaintiff alleges that all five defendant police officers conspired with Bunag and Granizo to

13   implicate, arrest, and cause the conviction of plaintiff on false criminal charges.  Because plaintiff has

14   not established that any officer violated his constitutional rights, this claim fails. *DeGrassi v. City of*

15   *Glendora*, 207 F.3d 636, 647-48 (9th Cir. 2000) ("Because we conclude that defendants' actions did

16   not violate DeGrassi's civil rights, the district court properly dismissed her claim for conspiracy to

17   violate her civil rights.").

18          Moreover, plaintiff can present no evidence that any officer agreed with Bunag or Granizo to

19   treat plaintiff a certain way.  No officer has testified to any agreement with Bunag or Granizo, or to

20   any communication with either of them except in the course of a response to a call for service.  That

21   these officers responded at various times to Bunag and Granizo's calls for police assistance based on

22   their fear of plaintiff or plaintiff's disruptive activity does not support an inference that the officers

23   agreed with these private individuals to treat plaintiff as they did.  The mere conclusory allegation of

24   a conspiratorial agreement, devoid of any specific supporting factual data, cannot overcome summary

25   judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)

26   (conclusory allegation of excessive force in section 1983 action, unsupported by factual data, are

27   insufficient to avoid summary judgment); *see Lujan v. National Wildlife Federation*, 497 U.S. 871,

28

1   888 (1990) (general averments do not embrace the specific facts needed to sustain complaint).  The

2   Court should enter judgment in the officer defendants' favor on this claim.

3   **V.    THE FIFTH CLAIM FOR RELIEF FOR MUNICIPAL LIABILITY FAILS BECAUSE
        PLAINTIFF CANNOT PROVE A VIOLATION OF HIS CONSTITUTIONAL
4       RIGHTS, AND BECAUSE PLAINTIFF CAN PRESENT NO EVIDENCE THAT ANY
        POLICE CONDUCT WAS IN FURTHERANCE OF ANY UNCONSTITUTIONAL
5       POLICY OR CUSTOM.**

6           Finally, plaintiff seeks to recover against the City for "customs, policies, patterns and/or

7   practices of [the City], including but not limited to deliberate indifference in the hiring, supervision,

8   training, and discipline of members of the SFPD" and of "failing to fully and fairly investigate

9   allegations of criminal conduct, and failure to train officers with regard[] to intervention in landlord

10  tenant disputes."  Complaint, ¶¶ 57-58.  He seeks to establish municipal liability under *Monell v.*

11  *Department of Social Services*, 436 U.S. 658 (1978).  Under *Monell*, *respondeat superior* does not

12  provide a basis for municipal liability under section 1983.  *Id.* at  691-95.  To recover against a

13  municipality, a plaintiff must prove an unconstitutional official policy or practice inflicted

14  constitutional harm on him.  *Id.* at 690-91.

15          Plaintiff cannot succeed on this claim for two reasons.  First, as demonstrated above, he has

16  not established a violation of any constitutional right.  There can be no *Monell* liability without proof

17  that an individual City employee inflicted constitutional harm.  *City of Los Angeles v. Heller*, 475

18  U.S. 796, 799 (1986); *Quintanilla v. City of Downey*, 84 F.3d 353, 355-56 (9th Cir. 1996), *cert.*

19  *denied*, 117 S.Ct. 972 (1997)**.**

20          Second, even if he can prove that an individual officer may have inflicted constitutional harm,

21  plaintiff can present no evidence that any such constitutional tort was pursuant to an official policy or

22  custom, as required under *Monell*.  Plaintiff conducted no discovery on hiring, supervision, or

23  training on investigation in general or in the context of landlord-tenant disputes.  He obtained some

24  records of specific instances in which the Police Department disciplined certain defendant officers for

25  unrelated incidents.  That they were disciplined is inconsistent with an allegation that the Department

26  has an unconstitutional policy of "deliberate indifference" to discipline.

27          The only showing plaintiff has made to date is a conclusory interrogatory response.  The City

28  asked plaintiff the following question:  "For every individual that you name as a defendant in this

MSJ AND MPA                                       24                        n:\lit\li2008\080465\00507413.doc
C 07-3433 MMC

1    action, please describe, in detail, what you allege that individual did to cause you injury or damage."

2    Margolis Decl., **Exh. E** (Interrog. No. 8.).  Plaintiff's complete response was:  "Each of the officers

3    acted in concert to falsely arrest plaintiff and ultimately to effectuate the eviction of plaintiff from his

4    residence.  The officers also acted in concert to wrongfully confiscate plaintiff's gun collection and

5    ammunition."  *Id.*, **Exh. F** (Interrog. Resp. No. 8). Again, this conclusory interrogatory response

6    cannot overcome summary judgment.  *Arpin*, 261 F.3d at 922.  The Court should enter judgment in

7    favor of the City on the *Monell* claim.

8                                         **CONCLUSION**

9            The motion for summary judgment should be granted.

10   Dated:  September 5, 2008

11                                         DENNIS J. HERRERA
                                           City Attorney
12                                         JOANNE HOEPER
                                           Chief Trial Deputy
13                                         DONALD P. MARGOLIS
                                           MEREDITH B. OSBORN
14                                         Deputy City Attorneys

15

16                                 By:_____/s/_____
                                           DONALD P. MARGOLIS
17
                                           Attorneys for Defendants
18                                         CITY AND COUNTY OF SAN FRANCISCO,
                                           THOMAS ABRAHAMSEN, LORENZO ADAMSON,
19                                         DAVID OBERHOFFER, JERRY KING, and
                                           MICHAEL WILLIAMS
20

21

22

23

24

25

26

27

28

MSJ AND MPA                               25                        n:\lit\li2008\080465\00507413.doc
C 07-3433 MMC