DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
DONALD P. MARGOLIS, State Bar #116588
MEREDITH B. OSBORN, State Bar #250467
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3853
Facsimile:     (415) 554-3837
E-Mail:        don.margolis@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
THOMAS ABRAHAMSEN, LORENZO ADAMSON,
DAVID OBERHOFFER, JERRY KING, MICHAEL
WILLIAMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD GREEN,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, THOMAS ABRAHAMSEN, LORENZO ADAMSON, DAVID OBERHOFFER, JERRY KING, MICHAEL WILLIAMS, RAMON BUNAG, ESTHER GRANIZO and Does 1-50, inclusive,<br><br>Defendants. | Case No. C 07-3433 MMC<br><br>**DECLARATION OF OFFICER THOMAS ABRAHAMSEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:   October 10, 2008<br>Time:           9:00 a.m.<br>Place:          Crtrm 7, 19th Fl.<br><br>Trial Date:     December 1, 2008 |

I, Thomas Abrahamsen, declare as follows:

1.  I have been an officer of the San Francisco Police Department since 1998, and assigned to the Taraval Division of the Department since 2000. I have personal knowledge of the contents of this declaration based on personal participation in the incident described and, if called upon to testify, could and would competently testify to its truth.

ABRAHAMSEN DECL. SUPPORTING SUMM. JUDGMENT; CASE NO. C-07-3433       1       n:\lit\li2007\080465\00503806.doc

2. On July 3, 2005, I was on duty as a San Francisco Police officer, patrolling in the City by car. At about 2:22 p.m., my partner Officer Lorenzo Adamson and I were dispatched to 1 Santa Barbara Avenue, San Francisco. The police dispatcher informed us that a woman named Esther had called for police service at about 2:20 p.m. that day, advising that someone had taken the security bars off of her windows and had padlocked another window, and that she was scared. The dispatcher also informed us that there had been several prior calls from this location concerning a landlord-tenant dispute.

3. From conversations with my fellow officer, Officer Jerry King, before arriving at 1 Santa Barbara Avenue, I was aware that shortly before July 3, 2005, Officer King had removed weapons from Mr. Green's premises.

4. Officer Adamson and I arrived at 1 Santa Barbara Avenue on July 3, 2005 at about 2:30 p.m. Upon arrival, Officer Adamson met with the person who had called for police service, whose name was Esther Granizo. Ms. Granizo told Officer Adamson (who told me) that she had come home at about 2:00 p.m. that day to find that the screws to two security bars on her rear windows were removed, and that she thought her tenant, Ronald Green, removed them. We examined the window and found screws sitting on the window sill, which apparently had been holding the security bars in place. Ms. Granizo told Officer Adamson she thought Mr. Green was harassing her because she was having him evicted, and that she was afraid of Mr. Green.

5. Officer Adamson then spoke with Ronald Green, who resided in a downstairs unit at 1 Santa Barbara Avenue. Mr. Green told Officer Adamson there was an ongoing dispute between him and Ms. Granizo concerning his living arrangement. Officer Adamson documented our contact by preparing an incident report, but we neither arrest anyone nor seized any property at that address that day.

6. Later in the month, on July 28, 2005, at about 2:13 p.m., Officer Adamson and I were again dispatched to 1 Santa Barbara Avenue. This time, I understood the person calling for police service was a man named Ramon, who I later came to understand was Ramon Bunag. As we made our way to that address, the police dispatcher reported over the air to us that Mr. Bunag had reported that his tenant, Ronald Green, had taken over possession of the building by force. The dispatcher also

ABRAHAMSEN DECL. SUPPORTING SUMM.        2
JUDGMENT; CASE NO. C-07-3433

1 | reported to us that Mr. Green may have firearms at his premises, including a long rifle. We also
2 | learned from the dispatcher while en route that Mr. Bunag stated Mr. Green had somehow worked his
3 | way into Mr. Bunag's house, was now occupying the premises, and would not let Mr. Bunag into the
4 | house.

5 |     7.    Officer Adamson and I arrived at 1 Santa Barbara Avenue at about 2:30 p.m. I had in
6 | mind my prior contact with Mr. Green earlier that month, on July 3, 2005. I recognized the house
7 | from the prior contact. I also had in mind that earlier that month, Officer King had removed for
8 | safekeeping several firearms from Mr. Green.

9 |     8.    I knocked on the lower level door to the unit that I knew, from my prior contact, that
10 | Green occupied. There was no answer at that door. A few moments later, however, I looked up and
11 | observed the opening of the door to the upstairs main entrance, which I understood did *not* lead
12 | directly to Mr. Green's living area, but rather led to the living area of someone else. Mr. Green
13 | appeared at that doorway, which tended to confirm the account we had received of Mr. Green having
14 | taken over the entire house, making me more suspicious about Mr. Green.

15 |     9.    Mr. Green came down the stairs to speak to me. Officer Adamson walked slightly
16 | north of the property, to the property next door, to speak with Mr. Bunag, who was standing there
17 | with Clarita Calabia, who I came to learn was another tenant at 1 Santa Barbara Avenue. At about
18 | this point, Lieutenant David Oberhoffer, my watch commander, arrived at the scene. I summarized
19 | for the lieutenant the facts recited above.

20 |     10.    Mr. Green then spoke with me and Lieutenant Oberhoffer. Mr. Green spoke in a
21 | bizarre manner that made me believe he was paranoid and delusional. He stated he had the right to
22 | change the locks on the doors to the house, and had done so, because it was his house. Mr. Green
23 | also told me that his landlords were conspiring against him and were part of a gang or religious
24 | group, that he needed a gun to protect himself, that some unknown person was trying to poison him,
25 | that he had taken possession of the premises "under the right of personal enjoyment," and that he was
26 | in the process of taking title to the property, although it was "all very complicated."

27 |     11.    Officer Adamson walked back to the area where Lieutenant Oberhoffer and I had been
28 | speaking with Mr. Green, and shared with us what he had learned from Mr. Bunag. He told us Mr.

ABRAHAMSEN DECL. SUPPORTING SUMM.    3
JUDGMENT; CASE NO. C-07-3433

Bunag had said that Mr. Green had threatened him with a gun, and that Mr. Green was crazy. He also told us Mr. Bunag told him that Mr. Bunag owned the house at 1 Santa Barbara Avenue, and that Mr. Green was occupying a portion of the house where he was not supposed to be. Officer Adamson handcuffed Mr. Green.

12. I asked Mr. Green if he had weapons in his living area. He said he had a rifle in his garage, next to the tool box. He gave me permission to enter the premises and take custody of the rifle. I entered the garage, found the rifle where Mr. Green said it was, and took custody of it. I inspected the rifle, and found one round of ammunition in the chamber and four in the magazine. The rifle had no functioning lock.

13. Mr. Green was arrested for trespassing, malicious mischief, and aggravated assault with a gun. I heard Mr. Green tell Lieutenant Oberhoffer he wanted to cooperate, that he had not done anything wrong. I heard him grant us permission to look through his apartment or living unit on the lower level of the house. During the search that followed, Lieutenant Oberhoffer found live ammunition in Mr. Green's unit, including 17 boxes of ammunition for .38-caliber pistols, .357 magnums, and 9-millimeter weapons, which we seized for safekeeping.

14. The arrest of Mr. Green and seizure of firearm and ammunition were based on the totality of the factors described above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I signed this declaration on September 3, 2008, at San Francisco, California.

_____
THOMAS ABRAHAMSEN