DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
DONALD P. MARGOLIS, State Bar #116588
MEREDITH B. OSBORN, State Bar #250467
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3853
Facsimile:    (415) 554-3837
E-Mail:       don.margolis@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
THOMAS ABRAHAMSEN, LORENZO ADAMSON,
DAVID OBERHOFFER, JERRY KING, MICHAEL
WILLIAMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD GREEN,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, THOMAS ABRAHAMSEN, LORENZO ADAMSON, DAVID OBERHOFFER, JERRY KING, MICHAEL WILLIAMS, RAMON BUNAG, ESTHER GRANIZO and Does 1-50, inclusive,<br><br>    Defendants. | Case No. C 07-3433 MMC<br><br>**DECLARATION OF OFFICER LORENZO ADAMSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:    October 10, 2008<br>Time:            9:00 a.m.<br>Place:           Crtrm 7, 19th Fl.<br><br>Trial Date:      December 1, 2008 |

I, Lorenzo Adamson, declare as follows:

1.  I have been an officer of the San Francisco Police Department since 1998, and assigned to the Taraval Division of the Department since 2000. I have personal knowledge of the contents of this declaration based on personal participation in the incident described and, if called upon to testify, could and would competently testify to its truth.

ADAMSON DECL. SUPPORTING SUMM.          1                           n:\lit\li2007\080465\00506451.doc
JUDGMENT; CASE NO. C-07-3433

2.    On July 3, 2005, I was on duty as a San Francisco Police officer, patrolling in the City by car. At about 2:22 p.m., my partner Officer Thomas Abrahamsen and I were dispatched to 1 Santa Barbara Avenue, San Francisco. The police dispatcher informed us that a woman named Esther had called for police service at about 2:20 p.m. that day, advising that someone had taken the security bars off of her windows and had padlocked another window, and that she was scared. The dispatcher also informed us that there had been several prior calls from this location concerning a landlord-tenant dispute.

3.    From conversations with my fellow officer, Officer Jerry King, before arriving at 1 Santa Barbara Avenue, I was aware that two days earlier, on July 1, 2005, Officer King had removed weapons from Mr. Green's premises.

4.    Officer Abrahamsen and I arrived at 1 Santa Barbara Avenue on July 3, 2005 at about 2:30 p.m. Upon arrival, I met with the person who had called for police service, whose name was Esther Granizo. Ms. Granizo told me that she had come home at about 2:00 p.m. that day to find that the screws to two security bars on her rear windows were removed, and that she thought her tenant, Ronald Green, removed them. I examined the window and found screws sitting on the window sill, which apparently had been holding the security bars in place. Ms. Granizo told me she thought Mr. Green was harassing her because she was having him evicted, and that she was afraid of Mr. Green.

5.    I then spoke with Ronald Green, who I learned resided in a downstairs unit at 1 Santa Barbara Avenue. Mr. Green told me there was an ongoing dispute between him and Ms. Granizo concerning his living arrangement. I prepared an incident report documenting the complaint and the interaction, but did not cite or arrest anyone on that date.

6.    On July 28, 2005, at about 2:13 p.m., Officer Abrahamsen and I were again dispatched to 1 Santa Barbara Avenue. This time, I understood the person calling for police service was a man named Ramon, who I later came to understand was Ramon Bunag. As we made our way to that address, the police dispatcher reported over the air to us that Mr. Bunag had reported that his tenant, Ronald Green, had taken over possession of the building by force. The dispatcher also reported to us that Mr. Green may have firearms at his premises, including a long rifle. We also learned from the

dispatcher while en route that Mr. Bunag stated Mr. Green had somehow worked his way into Mr. Bunag's house, was now occupying the premises, and would not let Mr. Bunag into the house.

7. Officer Abrahamsen and I arrived at 1 Santa Barbara Avenue at about 2:30 p.m. I had in mind my prior contact with Mr. Green earlier that month, on July 3, 2005. I recognized the house from the prior contact. I also had in mind that Officer King had removed for safekeeping several firearms from Mr. Green.

8. Officer Abrahamsen knocked on the lower level door to the unit that I knew, from my prior contact, that Green occupied. There was no answer at that door. A few moments later, however, I observed the opening of the door to the upstairs main entrance, which I understood did *not* lead directly to Mr. Green's living area, but rather led to the living area of someone else. Mr. Green appeared at that doorway. This event at least initially tended to confirm the account we had received of Mr. Green having taken over the entire house.

9. Mr. Green came down the stairs to speak to Officer Abrahamsen. I walked slightly north of the property, to the northeast corner of Santa Barbara Avenue and Head Street, to speak with Mr. Bunag, who was standing there with Clarita Calabia, who I came to learn was another tenant at 1 Santa Barbara Avenue. Mr. Bunag told me that Mr. Green was in Mr. Bunag's house, where he was not supposed to be. Mr. Bunag also told me that Mr. Green had threatened him with a firearm, and that Mr. Green was crazy. Bunag also told me that while pointing his weapon at Bunag, Green said words to the effect that "from now on I am the owner and if you try to move in you're dead out," which terrified Bunag.

10. I walked back to the location where Officer Abrahamsen was speaking with Mr. Green, and shared with Officer Abrahamsen that Mr. Bunag stated Mr. Green had threatened him with a weapon. At that point, I handcuffed Mr. Green. San Francisco Police Lieutenant David Oberhoffer had also arrived at the scene. I heard Mr. Green give Officer Abrahamsen permission to search his living area. Officer Abrahamsen and Lieutenant Oberhoffer then entered that living area. They found a rifle in the garage adjacent to the living area, and live ammunition, including 17 boxes of ammunition for .38-caliber pistols, .357 magnums, and 9-millimeter handguns.

11. We decided to arrest Green for trespassing, malicious mischief, and aggravated assault with a gun, based on the totality of factors described above.

12. We transported Mr. Green to the Taraval Station for booking. I took photographs of the weapon and ammunition that we seized. I attach as **Exhibit A** true and correct copies of those photographs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I signed this declaration on September 4, 2008, at San Francisco, California.

*[signature]*
LORENZO ADAMSON

# EXHIBIT A





MVC-006F.JPG  2005/07/28 17:06:14



MVC-002F.JPG 2005/07/28 17:04:19



