1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  DONALD P. MARGOLIS, State Bar #116588
   MEREDITH B. OSBORN, State Bar #250467
4  Deputy City Attorney
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:    (415) 554-3853
   Facsimile:    (415) 554-3837
7  E-Mail:       don.margolis@sfgov.org

8
   Attorneys for Defendants
9  CITY AND COUNTY OF SAN FRANCISCO,
   THOMAS ABRAHAMSEN, LORENZO ADAMSON,
10 DAVID OBERHOFFER, JERRY KING, MICHAEL
   WILLIAMS
11

12

13                     UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15  RONALD GREEN, | Case No. C 07-3433 MMC |
| 16              Plaintiff, | DECLARATION OF OFFICER JERRY KING IN SUPPORT OF |
| 17     vs. | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR |
| 18  CITY AND COUNTY OF SAN FRANCISCO, THOMAS ABRAHAMSEN, | PARTIAL SUMMARY JUDGMENT |
| 19  LORENZO ADAMSON, DAVID OBERHOFFER, JERRY KING, MICHAEL | Hearing Date:  October 10, 2008<br>Time:          9:00 a.m. |
| 20  WILLIAMS, RAMON BUNAG, ESTHER GRANIZO and Does 1-50, inclusive, | Place:         Crtrm 7, 19th Fl. |
| 21              Defendants. | Trial Date:    December 1, 2008 |
| 22 | |

23

24     I, Jerry King, declare as follows:

25     1.    I have been an officer of the San Francisco Police Department since 1992, and

26 assigned to the Taraval Division of the Department since 1995. I have personal knowledge of the

27 contents of this declaration based on personal participation in the incident described and, if called

28 upon to testify, could and would competently testify to its truth.

1

2.  On July 1, 2005, I was on duty as a San Francisco Police officer. At about 9:00 a.m., while patrolling, I was dispatched to 1 Santa Barbara Avenue, San Francisco.

3.  While traveling to 1 Santa Barbara Avenue in response to the dispatch, I learned the following information from the dispatcher: (a) a person named Ron called "911" minutes earlier stating that a tenant rented a room at his address, and was supposed to move out on July 1; stating that the tenant was still at the premises; and stating that the tenant had locked the owner out of the kitchen; (b) a person named Esther called "911" a few minutes later stating she was the landlord, and that the tenant named "Ron" was banging on the landlord's door, telling her to open it; (c) the "911" call taker could hear a male yelling in the background, and banging on the door; (d) Esther stated she is aware Ron owns a gun, but did not see weapons at the time of the call; (e) Esther was upstairs, and the tenant, Ron, lived downstairs.

4.  I arrived at 1 Santa Barbara at about 9:12 a.m. on July 1, 2005. The initial caller, Ron Green, met me upon my arrival. He invited me inside his living unit. After entering, I immediately noticed a loaded rifle in an upright position, near the front door. I confiscated the weapon for my own and other officers' safety.

5.  Mr. Green then told me that his roommate or housemate, Esther Granizo, was upstairs, and that he had joint ownership of the property. Mr. Green also told me Esther Granizo was supposed to move out on that day. I asked Mr. Green if he had any other weapons. He told me he had a 9-millimeter pistol under his shirt, on his belt. I seized the weapon, again for officer safety purposes.

6.  Other officers arrived at the scene. Officer James Drilon arrived at about 9:19 a.m. At about 9:22 a.m., he ran an identification check on Ron Green through the police dispatcher. Five minutes later, at about 9:27 a.m., we learned from dispatch that there was an outstanding warrant for Ron Green's arrest. Specifically, we learned that a warrant issued by a court on May 13, 1999 was active and outstanding for Ronald Green, date of birth August 14, 1970, for failure to appear in San Francisco County Superior Court on a speeding ticket. We had already ascertained that plaintiff Ron Green's date of birth was August 14, 1970, the same date of birth. Our computerized source of information also advised us to call the San Francisco Sheriff's Central Warrant Bureau to verify that

2

1  the warrant was active. Based on the knowledge I had gained by this point in my investigation – that
2  a warrant was outstanding for Mr. Green's arrest – I placed Mr. Green in handcuffs and detained him,
3  pending further investigation. I placed a call to the Central Warrant Bureau of the San Francisco
4  Sheriff's Office, to confirm the accuracy of the report of an outstanding warrant.

5        7.    While awaiting a response from the Central Warrant Bureau, I went upstairs, outside
6  Mr. Green's earshot, and spoke further with Ms. Granizo. She told me she was the other person who
7  called the police, advising the dispatcher that her tenant was banging on the door. She also told me
8  she had advised the dispatcher that her tenant, Mr. Green, might own guns, although she had not seen
9  one. I later asked Ms. Granizo if she was afraid of Mr. Green, and she emphatically said "yes." Ms.
10 Granizo told me Mr. Green was constantly harassing her, she had notified the police numerous times
11 regarding Mr. Green's actions, she felt intimidated by Mr. Green's banging on the door that day and
12 his demanding to use her kitchen, and he had threatened to damage her door. She also told me that in
13 the past Mr. Green had turned her electricity off and made loud noises throughout the day. She
14 mentioned she was in the process of evicting Mr. Green, and she believed he was being vindictive in
15 retaliation for the eviction efforts.

16       8.    I then advised Sergeant Michael Williams by radio of the situation, and he came to the
17 scene. I spoke again with Mr. Green, who acknowledged he had banged on Ms. Granizo's door,
18 claiming he was only attempting to use the kitchen under his agreement with Ms. Granizo. Mr.
19 Green also acknowledged that he was a tenant, not the landlord, and that he was being evicted. I
20 asked him whether he had any other weapons, and he said "yes."

21       9.    We eventually received a response to our inquiry to the Central Warrant Bureau. I
22 learned that the warrant for Mr. Green was no longer active. Accordingly, I promptly released Mr.
23 Green, unhandcuffing him. At the time that I handcuffed and detained Mr. Green based on the
24 outstanding warrant, all of the information accessible to me revealed that the warrant was active and
25 enforceable.

26       10.    After releasing Mr. Green from his handcuffs, I asked him if he had any other
27 weapons. He said yes, and consented to our searching his residence for weapons. We located five
28 weapons. We ran a registration check and learned that none were registered. At Sergeant Williams's

1 directive, which I understood to be based on all of the facts recited above, I confiscated the weapons
2 for safekeeping. The weapons were later taken to the Taraval Police Station.
3    I declare under penalty of perjury under the laws of the United States that the foregoing is true
4 and correct, and that I signed this declaration on September 4, 2008, at Sacramento, California.

*/s/ Jerry King*
JERRY KING