1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  DONALD P. MARGOLIS, State Bar #116588
   MEREDITH B. OSBORN, State Bar #250467
4  Deputy City Attorney
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:     (415) 554-3853
   Facsimile:     (415) 554-3837
7  E-Mail:        don.margolis@sfgov.org

8
   Attorneys for Defendants
9  CITY AND COUNTY OF SAN FRANCISCO,
   THOMAS ABRAHAMSEN, LORENZO ADAMSON,
10 DAVID OBERHOFFER, JERRY KING, MICHAEL
   WILLIAMS
11

12

13                     UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15 | RONALD GREEN,                              | Case No. C 07-3433 MMC
16 |     Plaintiff,                             | **DECLARATION OF LIEUTENANT DAVID OBERHOFFER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**
17 | vs.                                        |
18 | CITY AND COUNTY OF SAN FRANCISCO, THOMAS ABRAHAMSEN, LORENZO ADAMSON, DAVID OBERHOFFER, JERRY KING, MICHAEL WILLIAMS, RAMON BUNAG, ESTHER GRANIZO and Does 1-50, inclusive, | Hearing Date:  October 10, 2008
19 |                                            | Time:          9:00 a.m.
20 |                                            | Place:         Crtrm 7, 19th Fl.
21 |                                            | Trial Date:    December 1, 2008
22 |     Defendants.                            |

23

24     I, David Oberhoffer, declare as follows:

25     1.      I was employed by the San Francisco Police Department from 1981 to 2008, when I

26 retired from active duty. In 1997, I achieved the rank of lieutenant. At all times relevant to this

27 declaration, I was assigned to the Taraval Division of the Department. I have personal knowledge of

28

OBERHOFFER DECL. SUPPORTING SUMM.            1                    n:\lit\li2007\080465\00506631.doc
JUDGMENT; CASE NO. C-07-3433

1  the contents of this declaration based on personal participation in the incident described and, if called upon to testify, could and would competently testify to its truth.

2.   I was on duty on July 28, 2005. I was the watch commander for the entire district served by the Taraval Station. A watch commander has overall operational command of police services within a district during that commander's shift. I was monitoring radio traffic between the police dispatcher and patrol officers in the field, to determine whether my intervention in particular incidents might be necessary or appropriate.

3.   At about 2:12 p.m., the police dispatcher radioed over the air that a person named "Ramone", who I later learned was Ramon Bunag, had called for police service. The police dispatcher stated that Mr. Bunag had reported that his tenant at 1 Santa Barbara Avenue, Ronald Green, had taken over possession of the building by force. The dispatcher also reported to us that Mr. Green may have firearms at his premises, including a long rifle. I learned from dispatch that Officers Lorenzo Adamson and Thomas Abrahamsen were responding to 1 Santa Barbara Avenue.

4.   At about 2:23 p.m., the dispatcher reported that Mr. Bunag had stated Mr. Green somehow worked his way into Mr. Bunag's house, was now occupying the premises, and would not let Mr. Bunag into the house. Immediately after hearing this information, I began to make my way to 1 Santa Barbara Avenue to support Officers Adamson and Abrahamsen.

5.   At about 2:31 p.m., I arrived at 1 Santa Barbara Avenue. Upon my arrival, I spoke with Officer Abrahamsen. He told me that he had knocked on the lower level door to the unit that he knew, from prior contact, that Green occupied, and there was no answer at that door. Officer Abrahamsen went on to tell me that a few moments later, he observed the opening of the door to the upstairs main entrance, which he knew did *not* lead directly to Mr. Green's living area, but rather led to the living area of someone else. Mr. Green appeared at that doorway.

6.   Officer Abrahamsen and I spoke with Mr. Green. Mr. Green spoke and acted in a bizarre, ranting fashion. He told us that he had taken possession of 1 Santa Barbara Avenue "under the right of personal enjoyment." He said that the residence was his. He also stated he had the right to change the locks on the doors to the house, and had done so. I asked Mr. Green if he had any weapons on the premises. He said "yes," he had one in the garage.

7. I learned from speaking to Officer Adamson that he had interviewed Ramon Bunag. He reported that Mr. Bunag stated that Mr. Green was in Mr. Bunag's house and was not supposed to be there. He also reported Mr. Bunag stated Mr. Green threatened him with a gun, and that Mr. Green was "crazy."

8. I and possibly Officer Abrahamsen asked Mr. Green for permission to search his living unit for his rifle. Mr. Green said yes. Both Officer Abrahamsen and I entered the unit. Officer Abrahamsen found a bolt action rifle containing two rounds of ammunition. I found various calibers of ammunition plainly visible in a tackle box that I took from Mr. Green's unit, and on a table or desk on his unit. I did not need to look inside drawers of furniture, under beds, or inside closets. The ammunition included 17 boxes of ammunition for .38-caliber pistols, .357 magnums, and 9-millimeter handguns, nine boxes of ammunition for a Remington Long Rifle, rifle rounds, .357 magnum rounds, and .38-caliber special rounds. I also found two holsters containing rounds of ammunition for .38-caliber and 9-millimeter handguns.

9. I approved the arrest of Mr. Green for a psychiatric hold under Welfare and Institutions Code section 5150, as he appeared to be a danger to others; and on other charges including aggravated assault with a gun and trespass. I also approved the removal of his weapon, ammunition, and paraphernalia such as holsters. I based my approvals on the factors recited above, which I recapitulate as follows:

    a. Mr. Bunag reported that Mr. Green had threatened Mr. Bung with a gun; and that Mr. Green was crazy, which was evidence of an assault with a weapon and of Mr. Green's potential dangerousness;

    b. Mr. Green responded to Officer Abrahamsen's knock on the downstairs door that we knew was connected to Green's in-law unit, by opening the *upstairs* door that we knew led to the main house that we understood was not part of Green's leased area, which was evidence to me of trespassing;

  c. Mr. Green proclaimed to me and Officer Abrahamsen that the house belonged to him under the "right of personal enjoyment," and that he had exercised his right to change the locks on it; and

  d. Mr. Green had a loaded rifle and a large quantity of ammunition in his living unit. These last two factors pointed to Mr. Green's potential dangerousness and delusional thinking.

10. Based on my assessment of Mr. Green's behavior and statements, I believed that he was a danger to himself or to others, and I therefore authorized the seizure of his weapons, ammunition, and other paraphernalia including holsters.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I signed this declaration on September 3, 2008, at 1524 Hrs, California.

_____
DAVID OBERHOFFER

OBERHOFFER DECL. SUPPORTING SUMM.
JUDGMENT; CASE NO. C-07-3433   4