DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
DONALD P. MARGOLIS, State Bar #116588
MEREDITH B. OSBORN, State Bar #250467
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3853
Facsimile:     (415) 554-3837
E-Mail:        don.margolis@sfgov.org


Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
THOMAS ABRAHAMSEN, LORENZO ADAMSON,
DAVID OBERHOFFER, JERRY KING, MICHAEL
WILLIAMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| RONALD GREEN, | Case No. C 07-3433 MMC |
|---|---|
| Plaintiff, | **DECLARATION OF SERGEANT MICHAEL WILLIAMS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, THOMAS ABRAHAMSEN, LORENZO ADAMSON, DAVID OBERHOFFER, JERRY KING, MICHAEL WILLIAMS, RAMON BUNAG, ESTHER GRANIZO and Does 1-50, inclusive, | Hearing Date:   October 10, 2008<br>Time:           9:00 a.m.<br>Place:          Crtrm 7, 19th Fl. |
| Defendants. | Trial Date:    December 1, 2008 |

I, Michael Williams, declare as follows:

1.      I was employed by the San Francisco Police Department from 1980 to 2008, when I retired from active duty. In 1985, I achieved the rank of sergeant. I was assigned to the Taraval Division of the Department from 1990 through my retirement. I have personal knowledge of the

contents of this declaration based on personal participation in the incident described and, if called upon to testify, could and would competently testify to its truth.

2. On July 1, 2005, I was on duty as a San Francisco Police sergeant, driving a police car. My duties were to support the patrol activities of the officers assigned to the Taraval Station, who were under my supervision. These duties included monitoring radio communications between the police dispatcher and officers on patrol, and responding as necessary to the location of incidents.

3. At about 9:00 a.m. on July 1, 2005, I heard the dispatcher communicate over the radio, and saw through my on-board computer system, that: (a) a person named Ron called "911" minutes earlier stating that a tenant rented a room at his address, and was supposed to move out on July 1; stating that the tenant was still at the premises; and stating that the tenant had locked the owner out of the kitchen; (b) a person named Esther called "911" a few minutes later stating she was the landlord, and that the tenant named "Ron" was banging on the landlord's door, telling her to open it; (c) the "911" call taker could hear a male yelling in the background, and banging on the door; (d) Esther stated she is aware Ron owns a gun, but did not see weapons at the time of the call; and (e) Esther was upstairs, and the tenant, Ron, lived downstairs.

4. I learned by monitoring the radio and computer transmissions that Offficer Jerry King responded to the call and arrived at 1 Santa Barbara Avenue at about 9:12 a.m., followed by other officers a few minutes later.

5. At some point shortly after Officer King responded to the scene, he radioed me to advise me of the situation. He told me that he had removed a loaded rifle from Mr. Green's residence. I understood he had done so for the safety of officers, Mr. Green, and the public. He also told me Mr. Green acknowledged having a 9-millimeter pistol under his shirt, which Officer King also seized for safety purposes. He also told me that another responding officer had run an identification check on Mr. Green through the police dispatcher, learned that there was an outstanding warrant for Mr. Green's arrest, and therefore placed Mr. Green in handcuffs and detained him. He further told me that Esther Granizo, who also had called the police that morning, said she was afraid of Mr. Green, who she thought might own guns, because he was harassing her.

6.  After learning the above facts, I went to the scene. I understood Mr. Green had consented to a police search of his premises. I participated with Officer King in searching Mr. Green's premises. We located five weapons. I authorized Officer King to confiscate the weapons. I authorized the confiscation because I observed Mr. Green's extremely agitated and angry state. In particular, Mr. Green was exhibiting anger toward Ms. Granizo. For the protection of Ms. Granizo, other members of the public, and officers, I deemed it prudent to take the loaded firearms out of Mr. Green's possession, for safekeeping.

7.  The weapons were taken to the Taraval Police Station. I authorized Officer King to do so based on Ms. Granizo's statements that Mr. Green was harassing her, that she feared him, especially because she thought he might have guns, based on what I decided to be Mr. Green's untrue statement that he owned the premises, and based on Mr. Green's general demeanor. These factors gave me concern for the safety of Ms. Granizo, police officers, and the general public should Mr. Green continue to remain in possesion of his firearms.

8.  I ensured that my subordinate officers at the scene gave Mr. Green property receipts for all of the weapons and ammunition confiscated, and that Mr. Green received a specific explanation of the procedure to follow should he seek to retrieve that property.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I signed this declaration on September 2, 2008, at San Francisco, California.

_____
MICHAEL WILLIAMS

WILLIAMS DECL. SUPPORTING SUMM. JUDG.      3
CASE NO. C-07-3433